**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| BUCCANEER RESOURCES, LLC, *et al.*,[1] | § § | Case No. 14-60041 (DRJ) |
| Debtors. | § § § | Joint Administration Pending |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
AUTHORIZING PAYMENT OF CERTAIN PREPETITION (A) WAGES, SALARIES
AND OTHER COMPENSATION; (B) REIMBURSABLE EMPLOYEE EXPENSES;
(C) EMPLOYEE BENEFITS; AND (D) RELATED COSTS**

**NOTICE UNDER BLR 9013(b) AND 9013(i)**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: (i) Buccaneer Energy Ltd. (0107); (ii) Buccaneer Energy Holdings, Inc. (7170); (iii) Buccaneer Alaska Operations, LLC (7562); (iv) Buccaneer Resources, LLC (8320); (v) Buccaneer Alaska, LLC (4082); (vi) Kenai Land Ventures, LLC (2661); (vii) Buccaneer Alaska Drilling, LLC (7781); (viii) Buccaneer Royalties, LLC (5015); and (ix) Kenai Drilling, LLC (6370).

40662429.3

CONSIDERATION IS NOT WARRANTED; YOU SHOULD FILE AN IMMEDIATE RESPONSE.

THE DEBTORS HAVE REQUESTED THAT THIS MOTION BE CONSIDERED AT THE DEBTORS' FIRST DAY HEARINGS.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Buccaneer Resources, LLC ("BUC") and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), hereby file this motion (the "Motion") seeking entry of an order (the "Order") authorizing the Debtors to pay certain prepetition: (a) wages, salaries, and other compensation; (b) reimbursable employee expenses; (c) employee benefits; and (d) related costs; and granting the Debtors such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 363(b), 507, 541(b) and 1129(a)(9)(B) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

4. Founded in 2006, Buccaneer Energy, Ltd. is a publicly traded independent oil and gas company listed on the Australian Securities Exchange (the "ASX") under the symbol "BCC".[2] Although BCC is an Australian listed entity, the company operates exclusively through its eight U.S. subsidiary Debtors, each of which are headquartered in the U.S. and which maintain offices in Houston and Dallas, Texas, and Kenai and Anchorage, Alaska.

5. The Debtors' primary business is the exploration for and production of oil and natural gas in North America. Operations have historically focused on both onshore and offshore opportunities in the Cook Inlet of Alaska as well as the development of offshore projects in the Gulf of Mexico and onshore oil opportunities in Texas and Louisiana.

6. The Debtors have made a business strategy of identifying undervalued assets that can be quickly monetized through the use of leading edge, but proven technologies. Nevertheless, various economic and financial events have impaired the Debtors' liquidity and ability to perform in the future as described in the *Declaration of John T. Young, Jr., Chief Restructuring Officer of the Debtors, in Support of Emergency First Day Motions* (the "Young Declaration") filed in this case and incorporated herein by reference. As a result, on the date of this Motion (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee, examiner, or creditors' committee has been appointed.

---

[2] An initial public offering ("IPO") was successfully completed and BCC was listed on the ASX on November 19, 2007. On February 19, 2014, BCC requested and was granted a voluntary suspension of all trading of its securities.

40662429.3

7.     The Debtors' immediate objectives in commencing these chapter 11 cases are to minimize any loss in the value of their assets, preserve on-going business operations, and maximize creditor recoveries. To accomplish these ends, the Debtors intend to sell substantially all of their assets under a chapter 11 plan.

## RELIEF REQUESTED

8.     By this Motion, the Debtors seek entry of an Order authorizing them, in their sole discretion, to (i) pay prepetition claims and (ii) honor obligations and continue programs, as applicable, in the ordinary course of business relating to: (a) employee wages, salaries and other compensation; (b) reimbursable employee expenses; (c) employee benefits and related programs; and (d) payroll administration associated costs (collectively, the "Obligations"), and for certain related relief, as more fully described in this motion. To the best of the Debtors' knowledge, no individual employee is owed more than the $11,725 priority amount[3] on account of prepetition wages or other employee benefits. In any event, the Debtors do not seek authority to pay any individual on account of prepetition wages or other employee benefits an amount that exceeds the $11,725 priority amount.

## FACTS RELEVANT TO THIS MOTION

**A.     Salaries, Wages, Bonuses, Commissions and Deductions.**

9.     As of May 30, 2014, the Debtors collectively employed 33 salaried and hourly employees. Due to the impending bankruptcy filing, ten employees were terminated as part of a reduction in work force effective May 31, 2014. Three additional employees have been terminated effective June 2, 2014. One current employee is suspended without pay and another

---

[3] Bankruptcy Code section 507(a)(4) & (5) provide administrative expense treatment for employee wage and other benefit claims up to $11,725 per individual.

40662429.3

-4-

current employee is on personal paid leave. All personnel are employees of BUC (the "Employees"). These employees perform a variety of critical functions for the Debtors. No Employees are represented by unions.

10. The Debtors pay Employees on a semi-monthly basis. In aggregate for all Employees, the Debtors have historically paid wages and salaries (inclusive of taxes) of approximately $245,000 for each semi-monthly pay period. As of the Petition Date, the Debtors believe they are current on all wages earned prepetition.

11. The Debtors routinely deduct certain amounts from Employees' compensation that represent earnings that judicial authorities or the Employees have designated for deduction, including, for example, garnishments, child support, and similar deductions, and other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans. On a semi-monthly basis, the Debtors have historically deducted approximately $9,000.00 in the aggregate from Employees' pay.

12. Further, as of the Petition Date, the Debtors have (a) made deductions from Employees' paychecks on behalf of Employees for payment of various federal, state, and local income, Federal Insurance Contribution Act ("FICA") and other taxes, support payments and tax levies, savings programs, benefit plans insurance programs, and other similar programs (collectively, the "Deductions") and (b) paid such deducted amounts to a third party. The Debtors estimate that, as of the Petition Date, they have accrued $4,000.00 in employer payroll tax payments pursuant to the FICA and federal and state laws regarding unemployment and disability taxes.

13. In addition, the Debtors are required by law to withhold from an Employee's wages amounts related to federal, state, and local income taxes, social security taxes, and

Medicare taxes (collectively, the "Employee Taxes"). The Debtors are required to (i) match the social security and Medicare taxes; (ii) based on a percentage of gross payroll, pay additional amounts for state and federal unemployment insurance; and (iii) remit these payroll taxes to various taxing authorities.

14. The Debtors request authority to pay any salaries, wages, taxes, or other employee obligations accrued pre-petition in the ordinary course of business.

**B.      Payment of Reimbursable Business Expenses.**

15. Prior to the Petition Date and in the ordinary course of business, certain Employees incurred business expenses including, but not limited to, travel, car allowances, lodging, and meals. It would be inequitable and would cause harm to employee morale to deny reimbursement of such expenses. All such expenses were incurred on behalf of the Debtors in the ordinary course of business with the expectation that such expenses would be reimbursed in accordance with past practice. It is essential to the continued operation of the Debtors' businesses that the Debtors continue to reimburse Employees for such business-related expenses.

16. Under the Debtors' reimbursement policy, once reimbursement requests are submitted, reviewed and approved, payment is typically processed within approximately one week. Because Employees do not always submit claims for reimbursement promptly, it is difficult to determine the exact amount outstanding at any particular time. The Debtors have found that, on average, it takes between two and four weeks for an employee to submit his/her expense report. Taking into account this two-to-four week lag period, the Debtors estimate that the prepetition expense reimbursements will include reimbursable business expenses of approximately as much as $25,000.00 as of the Petition Date.

17. The Debtors request authority to pay any such prepetition reimbursement obligations immediately as and when presented for reimbursement by Employees in the ordinary course of business.

**B.     Payment of Prepetition Employee Benefit Claims.**

18. Prior to the Petition Date, the Debtors offered full-time Employees various standard employee benefits including, but not limited to (a) medical, dental, vision and prescription drug coverage, (b) basic life and voluntary life insurance, (c) basic and voluntary accidental death and dismemberment insurance, (d) disability insurance, (e) flexible spending accounts, (f) 401(k), and (h) miscellaneous other benefits in the ordinary course of business (collectively, the "Employee Benefits").

### (i)     Health and Welfare Benefits.

19. The Debtors offer Employees medical insurance (including prescription drug coverage), dental insurance, vision insurance, and flexible spending accounts. Enrollment in the medical, dental, vision, and/or flexible spending account plans is optional for the Employee. Employees may enroll in any of the health plans for which they are eligible, or, alternatively, they may waive enrollment.

20. Generally, health and welfare benefits sponsored by the Debtors continue until the end of the day in which employment ends. Coverage may continue for a longer period of time in certain circumstances, such as retirement or an involuntary separation under one of the severance plans. The terminated employees will all remain covered through June 30, 2014, and thereafter the terminated employees and his or her eligible dependents have the right to continue (as defined by law) medical, dental, health care flexible spending account, employee assistance plan ("EAP"), and/or vision coverage under COBRA.

21. The Debtors pay on average $55,000.00 per month for Employees' health care coverage. The Debtors request authorization to pay these amounts to providers of the Employee Benefits and to continue to fund all post-petition claims relating to the Employee Benefits in the ordinary course of business as they become due and payable.

### (ii) Life, Disability and Accident Insurance.

22. The Debtors provide and/or offer a number of different types of additional insurance benefits to their Employees, including basic life and accidental death and dismemberment, short-term disability, leave administration and a predecessor long term disability plan. The company contribution is approximately $100,000.00 per year for these benefits. The Debtors request authorization to continue to provide life, disability and accident insurance to Employees in the ordinary course of business.

### (iii) Payment of Prepetition Expenses Related to 401(k) Plan.

23. The Debtors maintain a 401(k) plan (the "401(k) Plan"), administered by E-Plan Services through which participating employees may defer a portion of their salary, and/or may make post-tax contributions, to help meet their financial goals and accumulate savings for their future.

24. Under the 401(k) Plan, a range of investment funds are available, including the major asset classes – stocks, bonds and short-term investments – as well as balanced portfolios. Additionally, the Debtors provide employer "matching" contributions in connection with the amounts that their Employees contribute to the 401(k) Plan. For all eligible Employees, the employer match is an amount equal to 3% of an Employee's eligible compensation.

25. Approximately fifteen (15) Employees currently participate in the savings plans. During 2013, the Debtors contributed approximately $150,000.00 to the 401(k) Plan.

26. The employee contribution and the Debtors' matching contribution that will need to be remitted to the 401(k) Plan on account of the next bi-weekly payroll is estimated to be approximately $5,000.00.

27. The Debtors seek authorization to collect and pay any and all prepetition and post-petition amounts attributable to the 401(k) Plan.

### C. Vacation Days and Paid Leave Days.

28. As part of their overall compensation, Employees are also entitled to receive a certain number of vacation days and sick leave each year generally at their regular daily rate of base pay. Employees earn vacation days each year depending upon the Employee's length of service with the Debtors. Accrued but unused vacation days are paid out to all Employees in each business unit upon termination of their employment with the Debtors. The Debtors estimate that, as of the Petition Date, total accrued but unpaid vacation liability is approximately $106,000.00.

29. Additionally, most Employees are provided paid sick days, and holidays (collectively, the "Paid Leave") each calendar year, all of which must be used within that year, or lost. Generally, if unused, Paid Leave may not be cashed out upon termination or retirement and may not be carried over to the following year.

30. The Debtors request authorization to continue to provide vacation days and paid leave days as they did in the ordinary course prepetition.

### D. Other Programs.

31. Under the laws of various states in which the Debtors have operations, the Debtors must maintain workers' compensation insurance. American Interstate is the Debtors' workers compensation carrier. The annual premium in respect of workers' compensation

insurance is approximately $29,242.00.

**BASIS FOR RELIEF**

**I.  Payment of the Obligations Is Warranted Under Section 363(b)(1) of the Bankruptcy Code.**

32. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts require only that the debtor has "some articulated business justification for using, selling, or leasing property outside the ordinary course of business." *In re ASARCO, LLC*, 650 F.3d 593, 601 (5th Cir. 2011) (quoting *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d 223, 1226 (5th Cir. 1986)); *see also In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted).

33. Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

34. Courts in this District and other districts within the Fifth Circuit have recognized the importance to a debtor of its employees in cases requesting relief similar to that requested here. *See, e.g.*, *In re Autoseis, Inc.*, Case No. 14-20130, Dkt. No. 244 (Bankr. S.D. Tex. Apr. 25,

2014); *In re ATP Oil & Gas Corp.*, Case No. 12-36187, Dkt. No. 136 (Bankr. S.D. Tex. Aug. 21, 2012); *In re Seahawk Drilling, LLC*, Case No. 11-20089, Dkt. No. 47 (Bankr. S.D. Tex. Feb. 14, 2011); *In re Spectrum Jungle Labs Corp., et al.,* Case No. 09-50455, Dkt. No. 48, (Bankr. W.D. Tex. Feb. 5, 2009); *In re Pilgrim's Pride Corp., et al*, Case No. 08-45644, Dkt. No. 65 (Bankr. N.D. Tex. Feb. 5, 2009); *In re Scotia Dev. LLC*, Case No. 07-20027, Dkt. No. 73 (Bankr. S.D. Tex. Jan. 24, 2007).  *See also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that relief regarding payment of prepetition wage claims was appropriate to "preserve and protect [the debtor's] . . . business and ultimately reorganize, retain its currently working employees and maintain positive employee morale").

35. The Debtors have satisfied the business judgment standard.  If BUC does not pay the Obligations, a material portion of BUC's workforce, including key product and service delivery functions, will face significant financial hardship and other risks, *e.g.*, regarding the receipt of healthcare coverage and insurances, and likely will seek alternative employment opportunities or will be demoralized and less productive.  Additionally, the deterioration of the Debtors' workforce may require large scale, likely resource- and cost-intensive, employee recruitment efforts at a time when the Debtors' management needs to focus on restructuring related activities.  Paying the Obligations is necessary for the Debtors to avoid unnecessary recruitment, severance, and related costs, to avoid certain operating risks, and to minimize the disruption to its operations.

## II. Payment of the Obligations is Warranted Under the Doctrine of Necessity.

36. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a). Specifically, this Court may use its power under Section 105(a) to authorize payment of prepetition obligations pursuant to the "doctrine of necessity" (also referred to as the "necessity of payment" doctrine).

37. The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh and New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *accord In re CEI Roofing, Inc.*, 315 B.R. 50, 58 (Bankr. N.D. Tex. 2004); *In re CoServ, LLC*, 273 B.R. 487, 493 (Bankr. N.D. Tex. 2002); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824-26 (D. Del. 1999) (noting that the Third Circuit permits debtors to pay prepetition claims that are essential to continued operation of business); *Official Comm. of Unsecured Creditors of Motor Coach Indus. Int'l, Inc. v. Motor Coach Indus. Int'l, Inc. (In re Motor Coach Indus. Int'l, Inc.)*, Bankr. No. 08-12136, 2009 WL 330993, at *3 (D. Del. Feb. 10, 2009) (denying a stay pending appeal on the grounds that there is not a serious basis to challenge the doctrine of necessity in the Third Circuit).

38. Courts also have permitted post-petition payment of prepetition claims pursuant to section 105(a) of the Bankruptcy Code in other situations, such as if nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business

40662429.3

reorganization plan. *See In re UNR Indus.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *Ionosphere Clubs*, 98 B.R. at 175-77 (finding that Section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

39. This approach is particularly critical where a prepetition creditor provides vital goods or services to a debtor that would be unavailable if the Debtor did not satisfy its prepetition obligations. In *In re Structurlite Plastics Corp.*, the bankruptcy court stated it "may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (quoting *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987)). The court explained that "a per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932. Indeed, as noted above, this Court and others have routinely authorized debtors to pay the prepetition claims of employees for wages, salaries, expenses and benefits on the grounds that the payment of such claims was necessary to effectuate a successful reorganization of a debtor's business.

40. Payment of the Obligations is warranted under the doctrine of necessity. The Employees provide the Debtors essential services necessary to conduct its business. Even if the Debtors did not require consummation of the transactions, payment of the prepetition claims of the Debtors' Employees would be essential to avoid large-scale attrition and service disruption, and associated costs, and, thus, its continued operation.

### III.     Certain of the Obligations are Entitled to Priority Treatment.

41.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the Obligations to priority treatment.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, for wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual, and contributions to an employee benefit plan, earned in the 180 days before filing of the petition).  Again, the Debtors believe payment of the Obligations at this time preserves the value of the estates for all interested parties.

### IV.     Payment of Certain of the Obligations is Required by Law.

42.     Certain of the Obligations represent Employees' earnings that either government entities, Employees, or judicial authorities have designated for deduction from Employees' pay.  Indeed, Obligations including contributions to the employee benefit plans and child support and alimony payments are not property of the Debtors' estates.  11 U.S.C. § 541(b).  And federal and state laws require the Debtors and their officers to make certain tax payments withheld from Employees' pay.  26 U.S.C. §§ 6672 and 7501(a); *see City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co., Inc. v. State of Mich. (In re DuCharmes & Co.)*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).  Because the withheld amounts are not property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the amounts to the proper parties in the ordinary course of business.

43. Similarly, under state law, the Debtors must maintain a workers' compensation program. If the Debtors fail to do so, state law may prohibit them from operating. Payment of all workers' compensation amounts, therefore, is crucial to the Debtors' continued operation.

## V. Limited Waiver of the Automatic Stay for Workers' Compensation Claims.

44. Section 362(a) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1). Section 362, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." *Id.* at § 362(d)(1). Cause exists here to modify the automatic stay to permit Employees to proceed with workers' compensation claims in the appropriate judicial or administrative forum. Staying the workers' compensation claims could have a detrimental effect on the financial well-being and morale of the Employees. As previously discussed, Employees' departure or demoralization likely will cause severe disruption to the Debtors' businesses and likely will impair the success of its restructuring.[4]

## VI. Processing of Checks and Electronic Fund Transfers Should Be Authorized.

45. The Debtors have sufficient funds to pay or remit the Obligations in the ordinary course of business using expected cash flows from ongoing business operations. The Debtors

---

[4] Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors or a waiver of the Debtors' rights to dispute any claim. The Debtors expressly reserve their rights to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

40662429.3

believe there is minimal risk that check or wire transfer requests that this Court has not authorized will be inadvertently made. Thus, the Debtors request that this Court authorize all applicable financial institutions to receive, process, honor and pay any and all checks or wire transfer requests in respect of the Obligations.

**VII.   The Requirements of Bankruptcy Rule 6003 Are Satisfied.**

46.   Under Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

47.   Bankruptcy Rule 6003 does not condition relief on imminent or threatened harm to the estate alone. Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally. *Cf.* FED. R. BANKR. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the <u>estate</u>") (emphasis added). Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary injunctions and courts will routinely consider third-party interests when granting such relief. *See, e.g., Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006) (stating that potential effect on the public interest is a factor in considering whether to grant preliminary injunction).

48.   The relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and all parties in interest. The Employees are vital to the Debtors' operations. Failure to satisfy the Obligations in the ordinary course of business within

40662429.3

-16-

the first 21 days of these chapter 11 cases will cause employees to terminate employment or will reduce productivity on account of lowered employee morale. The Debtors' operations would be severely disrupted at a critical juncture in its restructuring. Additionally, the Employees rely on their compensation, benefits and reimbursement of expenses to pay their living expenses and the effect could be financially ruinous if the Debtors cannot pay them in the ordinary course of business. Accordingly, the requirements of Bankruptcy Rule 6003 are satisfied.

**VIII.    Satisfaction of Bankruptcy Rules 6004(a) and 6004(h).**

49.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**NOTICE**

50.    Notice of this Motion will be provided by overnight delivery and/or e-mail or facsimile to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) all known or alleged secured creditors; (c) the 30 largest unsecured creditors of the Debtors on a consolidated basis; (d) AIX Energy, LLC; (e) all known shareholders holding over 5% of a class of equity interests in any of the Debtors; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Australian Securities and Investments Commission; and (h) the Internal Revenue Service. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**NO PRIOR REQUEST**

51.    No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: May 31, 2014.

Respectfully submitted,

**FULBRIGHT & JAWORSKI LLP**

By: */s/ William R. Greendyke*
William R. Greendyke
State Bar No. 08390450
Jason L. Boland
State Bar No. 24040542
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
william.greendyke@nortonrosefulbright.com
jason.boland@nortonrosefulbright.com

-and-

Toby L. Gerber
State Bar No. 07813700
Mark A. Platt
State Bar No. 00791453
FULBRIGHT & JAWORSKI LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
toby.gerber@nortonrosefulbright.com
mark.platt@nortonrosefulbright.com

**PROPOSED ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION**