## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| BUCCANEER RESOURCES, LLC, *et al.*,[1] | § § | Case No.: 14-60041 (DRJ) |
| Debtors. | § § § | Jointly Administered |

**EMERGENCY MOTION FOR ENTRY OF AN ORDER APPROVING COMPROMISE AND MUTUAL RELEASE BETWEEN THE DEBTORS AND COOK INLET REGION, INC.**

### NOTICE UNDER COMPLEX CASE ORDER

A HEARING WILL BE CONDUCTED ON THIS MATTER ON **JANUARY 13, 2015 AT 3:00 P.M.** BEFORE THE HONORABLE JUDGE MARVIN ISGUR IN COURTROOM 404, UNITED STATES COURTHOUSE, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THE PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THE PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: (i) Buccaneer Energy Limited (0107); (ii) Buccaneer Energy Holdings, Inc. (7170); (iii) Buccaneer Alaska Operations, LLC (7562); (iv) Buccaneer Resources, LLC (8320); (v) Buccaneer Alaska, LLC (4082); (vi) Kenai Land Ventures, LLC (2661); (vii) Buccaneer Alaska Drilling, LLC (7781); (viii) Buccaneer Royalties, LLC (5015); and (ix) Kenai Drilling, LLC (6370).

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Buccaneer Resources, LLC and its above-captioned affiliated debtors (collectively, the "Debtors") file this *Emergency Motion for Entry an Order Approving Compromise and Mutual Release Between the Debtors and Cook Inlet Region, Inc.* (the "Motion"), in support thereof, respectfully state as follows:

## BASIS FOR EMERGENCY CONSIDERATION AND RELIEF REQUESTED

1. The hearing (the "Confirmation Hearing") on the Debtors' *First Amended Joint Chapter 11 Plan of Reorganization for the Debtors and Debtors-in-Possession* (the "Plan") commenced on December 8, 2014. At that Confirmation Hearing, the Debtors announced that they were continuing to work with parties as to an agreeable form of confirmation order that would resolve all pending objections to the Debtors' Plan, including the objection filed by CIRI (the "CIRI Plan Objection").

2. On December 15, 2014, CIRI and AIX Energy, LLC ("AIX") filed a *Notice Regarding Status of CIRI Settlement* (the "CIRI / AIX Notice") [Dkt. No. 571] informing the Court and all creditors and parties in interest in these bankruptcy cases that CIRI and AIX have reached a settlement (the "CIRI / AIX Settlement") fully and completely resolving their disputes, and that such settlement may not impact the Debtors or their estates and thus did not require Court approval or disclosure.

3. In conjunction with, but not as part of the CIRI / AIX Settlement, CIRI has offered to the Debtors to (i) withdraw its proofs of claim filed in these cases; (ii) withdraw its pending motion requesting an administrative expense claim; (iii) withdraw its Plan Objection; and (iv) release any and all other claims and causes of action against the Debtors and their estates

in exchange for a release by the Debtors from all claims that they could assert against CIRI (the "Mutual Release") in the form attached hereto as **Exhibit A**.

4. The Debtors have considered CIRI's request, have analyzed any and all potential claims and causes of action that the Debtors and their estates may have against CIRI, and have considered the pros and cons associated with CIRI's request and the Mutual Release.  After consideration of these and other factors, the Debtors have determined in their business judgment and after consulting with their advisors and the advisors for the Official Committee of Unsecured Creditors (the "Committee"), that the Mutual Release is in the best interests of the Debtors, their estates, and all creditors and other parties in interest.  Among other things, the Mutual Release would favorably resolve substantial pending secured, unsecured and administrative claims currently asserted against the estates, and would clear the path for confirmation of the Debtors' Plan.

5. Accordingly, the Debtors seek emergency consideration of this Motion so that it can be heard in connection with the Confirmation Hearing which is set to resume on January 13, 2015.  This Rule 9019 Motion and the corresponding Mutual Release is premised upon final execution of the settlement between AIX and CIRI.  If, at the time this Motion is set for hearing on January 13, 2015, CIRI has not finalized its settlement with AIX, CIRI reserves the right to withdraw its support of this Motion.

### JURISDICTION, VENUE AND AUTHORITY

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7. This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (C), and (L).  Debtors consent to the entry of final orders or judgments by this

41304663.6

Court if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## RELEVANT FACTUAL BACKGROUND

**A.     The CIRI Dispute.**

8.     Prepetition, CIRI commenced a lawsuit (the "State Court Litigation") in the Superior Court for the State of Alaska in the Third Judicial District of Anchorage (the "State Court"), Case No. 3AN-13-09911 CI, alleging that the Debtors drilled certain productive gas wells without complying with spacing and pooling agreement requirements and therefore has been unlawfully draining its subsurface property.  The relief sought in the State Court Litigation includes damages for alleged draining occurring prepetition.  CIRI also commenced a proceeding before the Alaska Oil and Gas Conservation Commission (the "AOGCC") seeking a determination of the parties' respective rights to proceeds from the wells (the "AOGCC Proceeding").

9.     On April 23, 2014, the Alaska State Court entered an order in the State Court Litigation granting, in part, CIRI's motion for summary judgment (the "State Court Order").  The State Court Order is an interlocutory order that remains subject to appeal.

10.    On May 22, 2014, the AOGCC entered an order (the "Escrow Order") requiring, among other things, the Debtors to escrow an amount, commencing June 1, 2014, equal to the volume of gas that has been sold from the KL 1-1 and 1-3 wells.[2]  The Debtors have since escrowed certain gas sale proceeds in accordance with the Escrow Order.  Also on May 22,

---

[2] On September 24, 2014, in light of the Debtors' difficulties in establishing the escrow account pursuant to the AOGCC's requirements, the AOGCC amended paragraph 1 of the Escrow Order from "…and (a) whose deposits are insured by an agency of the federal government or (b) that is subject to regulation by the Division of Banking, Securities and Corporations in the Department of Community and Economic Development" to "…and whose deposits are insured by the Federal Deposit Insurance Corporation."

Thereafter, the Debtors promptly entered into an Escrow Agreement (the "Escrow Agreement") with First National Bank Alaska.

41304663.6

4

2014, the AOGCC issued a notice of hearing to determine "an appropriate allocation of ownership interests" in the Kenai Loop gas fields and an "allocation of production, royalties and expenses" unless the various parties came to an agreement before July 7, 2014. While that proceeding was originally stayed, the Debtors agreed to lift the stay to allow the AOGCC Proceeding to continue pursuant to an agreed order entered on August 18, 2014 [Dkt. No. 316].[3] The State Court Litigation remains stayed.

**B.     The Bankruptcy Cases.**

11.     The Debtors commenced voluntary proceedings under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on May 31, 2014.

12.     On September 26, 2014, CIRI filed the following proofs of claim (collectively, the "CIRI Proofs of Claim"):

- Claim No. 3 filed against Buccaneer Royalties, LLC in the amount of $5,750,000.00 (plus unliquidated amounts).
- Claim No. 5 filed against Kenai Land Ventures, LLC in the amount of $5,750,000.00 (plus unliquidated amounts).
- Claim No. 10 filed against Buccaneer Alaska Drilling, LLC in the amount of $5,750,000.00 (plus unliquidated amounts).
- Claim No. 15 filed against Buccaneer Alaska, LLC in the amount of $5,750,000.00 (plus unliquidated amounts).
- Claim No. 19 filed against Buccaneer Alaska Operations, LLC in the amount of $5,750,000.00 (plus unliquidated amounts).
- Claim No. 23 filed against Buccaneer Energy Limited in the amount of $5,750,000.00 (plus unliquidated amounts).
- Claim No. 97 filed against Buccaneer Resources, LLC in the amount of $5,750,000.00 (plus unliquidated amounts).

13.     On October 21, 2014, upon motion of the Debtors, the Court entered an order establishing November 14, 2014 as the deadline for any party to assert a request for payment of

---

[3] To date, the AOGCC has not issued any ruling adjudicating the dispute between the parties, and the hearing that was originally set to commence on December 3, 2014 was continued by agreement of the parties.

41304663.6

5

an administrative expense claim incurred between May 31, 2014 and October 31, 2014. CIRI filed its *Motion for Allowance of Administrative Expense Claim* (the "CIRI Administrative Claim Motion") [Dkt. No. 531] on November, 14, 2014, asserting various unliquidated and contingent administrative expense claims.

14. On November 5, 2014, the Debtors filed their Plan (as amended) and Disclosure Statement. *See* Dkt. Nos. 506 & 507. CIRI thereafter filed the CIRI Plan Objection on December 2, 2014 [Dkt. No. 542].

15. The Confirmation Hearing commenced on December 8, 2014, and was thereafter adjourned to December 22, 2014 and January 5, 2015.

## DESCRIPTION OF THE MUTUAL RELEASE

16. The compromise and settlement with CIRI is straightforward: CIRI has agreed to (i) withdraw the CIRI Proofs of Claim; (ii) withdraw the pending CIRI Administrative Claim Motion; (iii) withdraw the CIRI Plan Objection; and (iv) release any and all other claims and causes of action it may have against the Debtors and their estates. In exchange, the Debtors will also mutually release CIRI from any and all potential claims and causes of action the Debtors, including their successors and assigns, may have against CIRI. In this respect, the principal terms of the Mutual Release are as follows:[4]

    A.    <u>Withdrawal of CIRI Proofs of Claim, the CIRI Administrative Claim Motion and the CIRI Plan Objection</u>. Upon entry of the Bankruptcy Court Approval Order, the CIRI Proofs of Claim, the CIRI Administrative Claim Motion, and the CIRI Plan Objection shall be deemed withdrawn without further Order of the Court.

    B.    <u>Complete Release of the Debtors</u>. Upon entry of the Bankruptcy Court Approval Order, and in consideration of good and valuable consideration, the sufficiency and receipt of which CIRI acknowledges, CIRI, on behalf of itself and its successors and assigns, hereby fully and unconditionally

---

[4] The following summary is provided for convenience only and is qualified in its entirety by the Mutual Release.

41304663.6

RELEASES, ACQUITS, and FOREVER DISCHARGES the Debtors, their estates and their successors and assigns, including but not limited to the Reorganized Debtors, Liquidating Trust and Liquidating Trustee, as well as each of their representatives, advisors, attorneys and agents with respect to acts performed in their capacity as a representative, advisor, attorney or agent of the Debtors, their estates or their successors and assigns (collectively, the "Debtors/Estates Released Parties"), from any and all possible action and actions; cause and causes of action; debts; suits; accounts; promissory notes; deposits; covenants; contracts; controversies; agreements; promises; damages; rights; duties; liens (legal or equitable); rights and remedies of subrogation; rights of contribution and/or reimbursement; executions; claims; obligations; allegations; demands; losses; costs; expenses; and liabilities, whatsoever and of any kind or nature that CIRI had, has, or may have against the Debtors/Estates Released Parties, including, but not limited to, all possible actions, causes of action, claims, obligations, allegations, demands, losses, costs, expenses, and liabilities from the beginning of time through the date of this Mutual Release. CIRI and CIRI's undersigned signatory represent and warrant that CIRI's undersigned signatory has the authority from CIRI to execute and deliver this Mutual Release on its behalf. For avoidance of doubt, through this release CIRI is not releasing any of its claims and/or interests in the Kenai Loop Gas Field or the funds deposited under the Escrow Agreement that were transferred and sold to AIX Energy LLC through and under these Bankruptcy Cases.

B.  Complete Release of CIRI. Upon entry of the Bankruptcy Court Approval Order, and in consideration of good and valuable consideration, the sufficiency and receipt of which the Debtors and their estates acknowledge, the Debtors and their estates, on behalf of themselves and their successors and assigns, including but not limited to the Reorganized Debtors, Liquidating Trust and Liquidating Trustee, hereby fully and unconditionally RELEASE, ACQUIT, and FOREVER DISCHARGE CIRI, as well as each of its representatives, advisors, attorneys and agents with respect to acts performed in their capacity as a representative, advisor, attorney or agent of CIRI, from any and all possible action and actions; cause and causes of action; debts; suits; accounts; promissory notes; deposits; covenants; contracts; controversies; agreements; promises; damages; rights; duties; liens (legal or equitable); rights and remedies of subrogation; rights of contribution and/or reimbursement; executions; claims; obligations; allegations; demands; losses; costs; expenses; and liabilities, whatsoever and of any kind or nature that the Debtors and/or their estates had, has, or may have against CIRI, including, but not limited to, all possible actions, causes of action, claims, obligations, allegations, demands, losses, costs, expenses, and liabilities from the beginning of time through the date of this Mutual Release. The Debtors and the Debtors' undersigned signatory represent and warrant that the Debtors' undersigned

signatory has the authority from the Debtors and their estates to execute and deliver this Mutual Release on its behalf.

C. <u>Bankruptcy Court Approval</u>. The Mutual Release is contingent upon the Bankruptcy Court's entry of an order approving the Mutual Release in the Bankruptcy Cases (the "<u>Bankruptcy Court Approval Order</u>"). If the Bankruptcy Court does not enter an order approving the Mutual Release, every part of this Mutual Release is null and void and has no evidentiary, or other legal, effect. The Debtors have agreed to use their best efforts to obtain entry of an order by the Bankruptcy Court approving the Mutual Release.

## ARGUMENT AND AUTHORITIES

17. The merits of a proposed compromise should be judged under the criteria set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). *TMT Trailer* requires that a compromise must be "fair and equitable." *TMT Trailer*, 390 U.S. at 424; *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir.), *cert. denied*, 469 U.S. 880 (1984). The terms "fair and equitable" mean that (i) senior interests are entitled to full priority over junior interests; and (ii) the compromise is reasonable in relation to the likely rewards of litigation. *In re Cajun Electric Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

18. In determining whether a proposed compromise is fair and equitable, a Court should consider the following factors:

    (i)    the probabilities of ultimate success should the claim be litigated;

    (ii)    the complexity, expense, and likely duration of litigating the claim;

    (iii)    the difficulties of collecting a judgment rendered from such litigation; and,

    (iv)    all other factors relevant to a full and fair assessment of the wisdom of the compromise.

*TMT Trailer*, 390 U.S. at 424. The Fifth Circuit has further elaborated on the factors to be considered in evaluating the wisdom of a proposed settlement. One factor to be considered is

"the paramount interest of creditors with proper deference to their reasonable views." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1996). Another factor bearing on the wisdom of the compromise is the extent to which the proposed settlement is the product of arms-length negotiation. *In re Foster Mortgage Corp.*, 68 F.3d 914, 918 (5th Cir. 1996). In deciding whether to accept a compromise, the debtor is required to reach an informed judgment, after diligent investigation, as to whether it is prudent to eliminate the inherent risks, delays, and expense of prolonged litigation. *In re Mailman Stream Carpet Cleaning Corp.*, 212 F.3d 632 (1st Cir. 2000). A court is not to substitute its own judgment for that of the debtor, but rather to "canvass the issues" and determine whether the settlement "falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 609 (2d Cir. 1983).

19. The Debtors, Committee and CIRI believe that the proposed compromise satisfies the requirements established in *TMT Trailer* and *Cajun Electric*.

**A.   Probabilities of Success.**

20. The proposed compromise with CIRI through execution of the Mutual Release is fair, equitable and reasonable given the *bona fide* disputes and controversies that exist between the parties, both as to the existence and extent of liability, if any, and as to the amount of damages, if any. Specifically, the parties continue to dispute (i) whether the Debtors drilled certain productive gas wells without complying with spacing and pooling agreement requirements; (ii) whether the Debtors unlawfully drained CIRI's subsurface property; (iii) whether—and to what extent—the Debtors are liable for damages resulting from any alleged draining that occurred prepetition; (iv) whether the CIRI Proofs of Claim are valid or otherwise objectionable; (v) whether the CIRI Administrative Claim Motion is valid or whether the claims described in such motion constitute pre-petition claims; (vi) whether CIRI has submitted itself to the jurisdiction of this Court through its participation in these cases; and (vii) whether the CIRI

41304663.6

Plan Objection would prevail. Aside from the disputes listed hereinabove, the Debtors are not aware of any other claims or potential claims against CIRI (whether prepetition or post-petition) and further note in this regard that the Debtors have not made any payments or transfers to CIRI (whether prepetition or post-petition).

21. The Debtors and CIRI each have different views as to the strength of each other's positions on all of these matters, and both parties have zealously pursued and defended such claims and causes of action before the AOGCC, the State Court, and this Court. The existence of these *bona fide* disputes between the parties, however, reflects the significant litigation risk for each of the parties at both the trial and appellate levels if these disputes are not settled. The proposed compromise eliminates all such litigation risks, including the resultant delay and risk of exposure to damages and additional attorneys' fees, and represents an acceptable and preferred compromise for the parties.

**B.     Complexity, Expense, and Likely Duration.**

22. The claims asserted by CIRI against the Debtors and their estates, along with any potential counterclaims the Debtors and their estates may have against CIRI,[5] are factually complex and would involve a number of fact and expert witnesses located in both Texas and Alaska. Additionally, the current litigation and claims with CIRI are pending in three separate forums, including before the AOGCC, the State Court, and this Court. Continuing to litigate these claims in multiple forums, which would require both Texas and Alaska counsel, would be extremely expensive and time consuming. Such litigation is further complicated by the fact that the Debtors now only have 1 (one) employee, and that employee will soon be terminated on the Effective Date of the Plan.

---

[5] As stated above, the Debtors are not currently aware of any affirmative claims against CIRI.

41304663.6

## C.  Difficulty in Collecting Judgment.

23.  On information and belief, CIRI has sufficient assets to pay any judgment relating to any claims the Debtors have or could assert against CIRI.[6]  Notwithstanding that belief, CIRI is an Alaskan native corporation; thus, any judgment collection action would likely involve attorneys and other professionals in both Texas and Alaska.  This compromise, however, would finally resolve all of the pending disputes between the parties that have been pending for over a year.  Moreover, a prompt resolution that results in a full release between the parties—as opposed to a judgment after months and/or years of litigation—completely eliminates any collection risks that could arise in the future.

## D.  Other Factors.

24.  The Debtors believe that the proposed Mutual Release is equitable and serves the purposes underlying the Bankruptcy Code.  Moreover, the proposed compromise and Mutual Release outlined herein would favorably resolve substantial pending unsecured and administrative claims currently asserted against the estates, and would clear the path for confirmation of the Debtors' Plan through the withdrawal of CIRI's Plan Objection.  Accordingly, the Debtors believe that the proposed global settlement is in the best interests of the Debtors, their creditors and their estates and should be approved by the Court.

## CONCLUSION

WHEREFORE, the Debtors, Committee and CIRI respectfully request that the Court:  (a) enter an order approving the Mutual Release; and (b) grant such other relief as the Court may deem just and proper.

---

[6] *See supra* n. 5.

41304663.6

Dated:  January 8, 2015

Respectfully submitted,

**FULBRIGHT & JAWORSKI LLP**

By:  */s/ Jason L. Boland*
William R. Greendyke
State Bar No. 08390450
Jason L. Boland
State Bar No. 24040542
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246
william.greendyke@nortonrosefulbright.com
jason.boland@nortonrosefulbright.com

**ATTORNEYS FOR THE DEBTORS AND DEBTORS-IN-POSSESSION**

-and-

**THOMPSON & KNIGHT LLP**

By:  */s/ Robert L. Paddock*
Robert L. Paddock
State Bar No. 24002723
Randy W. Williams
State Bar No. 21566850
333 Clay Street, Suite 3300
Houston, Texas 77002-4499
Telephone:  (713) 654-8111
Facsimile:  (713) 654-1871
robert.paddock@tklaw.com
randy.williams@tklaw.com

Ira L. Herman
State Bar No. 24063314
Jennifer A. Christian (pro hac vice)
NY Atty Registr. No. 3940566
THOMPSON & KNIGHT LLP
900 Third Avenue, 20th Floor
New York, New York 10022
Telephone:  (212) 751-3001
Facsimile:  (212) 751-3113
ira.herman@tklaw.com
jennifer.christian@tklaw.com

**ATTORNEYS FOR COOK INLET REGION, INC.**

41304663.6

-and-

**GREENBERG TRAURIG, LLP**

By:  */s/ Shari L. Heyen*
Shari L. Heyen
State Bar No. 09564750
David R. Eastlake
State Bar No. 24074165
1000 Louisiana, Suite 1700
Houston, Texas 77002
HeyenS@gtlaw.com
EastlakeD@gtlaw.com

- and -

David B. Kurzweil (Admitted Pro Hac Vice)
Lee B. Hart (Admitted Pro Hac Vice)
Terminus 200
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30327
KurzweilD@gtlaw.com
HartLe@gtlaw.com

**ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

41304663.6

13