

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

ENTERED
01/13/2015

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| BUCCANEER RESOURCES LLC, *et al.*,[1] | § § | Case No. 14-60041 (DRJ) |
| Debtors. | § § § | Jointly Administered |

# ORDER FINALLY APPROVING FIRST AMENDED DISCLOSURE STATEMENT AND CONFIRMING FIRST AMENDED JOINT CHAPTER 11 PLAN
[RELATES TO DKT. NOS. 506, 507, 511, 535, 542 & 543]

Pursuant to this Court's Order entered November 6, 2014 [Dkt. No. 511] (the "Disclosure Statement Order") conditionally approving the First Amended Disclosure Statement Accompanying the First Amended Joint Plan of Reorganization for the Debtors and Debtors-in-Possession under Chapter 11 of the Bankruptcy Code (as modified through November 5, 2014) (the "Disclosure Statement") [Dkt. No. 507] and fixing deadlines for voting and objections, the Court conducted a hearing on December 8, 2014 (the "Confirmation Hearing") to consider final approval of the Disclosure Statement and confirmation of the First Amended Joint Chapter 11 Plan of Reorganization for the Debtors and Debtors-in-Possession (as modified through January 13, 2015) [Dkt. No. 589] (the "Plan").  Having considered the following:

(i)   the sworn testimony of the witnesses of the Debtors proffered and/or called at the Confirmation Hearing;

(ii)  the exhibits of the Debtors admitted into evidence at the Confirmation Hearing;

(iii) the evidence in respect of the transmittal and service of the solicitation packages, which was filed with the Bankruptcy Court and admitted into evidence without objection;

(iv)  the evidence regarding tabulation of votes on the Plan [Dkt. No. 553], which was admitted into evidence without objection;

(v)   the arguments of counsel and other parties-in-interest presented at the Confirmation Hearing;

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases" or "Cases"), along with the last four digits of each Debtor's tax identification number, are:  (i) Buccaneer Energy Limited (0107); (ii) Buccaneer Energy Holdings, Inc. (7170); (iii) Buccaneer Alaska Operations, LLC (7562); (iv) Buccaneer Resources, LLC (8320); (v) Buccaneer Alaska, LLC (4082); (vi) Kenai Land Ventures, LLC (2661); (vii) Buccaneer Alaska Drilling, LLC (7781); (viii) Buccaneer Royalties, LLC (5015); and (ix) Kenai Drilling, LLC (6370).

(vi)   the three (3) objections filed or asserted with respect to final approval of the Disclosure Statement or confirmation of the Plan (collectively, the "Objections");

(vii)  the resolution and settlement of the Objections to final approval of the Disclosure Statement or confirmation of the Plan;

(viii) the Plan Supplement, as filed with the Bankruptcy Court; and

(vix)  the pleadings and other documentation filed by the Debtors in support of the Plan,

the Court, having taken judicial notice of and considered the docket in these Chapter 11 Cases, and being familiar with the Plan and other relevant factors affecting these Chapter 11 Cases pending under the Bankruptcy Code, and having found that due and proper notice has been given with respect to the Confirmation Hearing and the deadlines and procedures for filing objections to the Plan, upon the record of the Confirmation Hearing (which is incorporated herein by reference), and after due deliberation thereon, and sufficient cause appearing therefor; the Court hereby makes the following findings of fact and conclusions of law:

1.  The findings and conclusion set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, made applicable to this proceeding pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.  On November 12, 2014, the Debtors mailed to all known Creditors, Interest Holders, the United States Trustee and to all persons that have entered an appearance in this case (i) a CD containing in pdf form the Disclosure Statement, the Plan and the Disclosure Statement Order; and (ii) voting ballots. Proof of service of the foregoing has been filed with the Court by the Debtors and is sufficient [Dkt. No. 526]. The notice provided by the Debtors satisfies the requirements of all applicable Federal Rules of Bankruptcy Procedure, including, but not limited to, Rules 2002(a), (b), (c), (d), (j) and (k) and is adequate and proper in all respects under the circumstances of these cases.

## *Jurisdiction and Venue*

3.  The Bankruptcy Court has both subject matter jurisdiction and constitutional authority over these chapter 11 cases, to approve the Disclosure Statement, and to confirm the Plan pursuant to 28 U.S.C. §§ 157 and 1334.

4.  Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter final orders with respect thereto.

5.  Venue of these cases is proper in this District pursuant to 28 U.S.C. §§ 1408(1) and 1409.

6. The Debtors are eligible to be debtors under § 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under § 1121(a) of the Bankruptcy Code. The Chapter 11 Cases were filed in good faith and not for any improper purpose.

7. All parties (including, without limitation, all taxing authorities and other Governmental Units entitled to notice) required to be given notice of the Confirmation Hearing, including notice of the deadline for filing and serving objections to confirmation of the Plan, have been given proper, timely, and adequate notice in accordance with the Federal Rules of Bankruptcy Procedure and have had an ample opportunity to appear and be heard with respect thereto. No other or further notice is necessary or required.

8. Pursuant to § 1125(d) of the Bankruptcy Code, the Debtors' transmittal of the Plan solicitation packages and their solicitation of acceptances of the Plan are not and will not be governed by or subject to any otherwise applicable law, rule or regulation governing the solicitation or acceptance of a plan of reorganization or the offer, issuance, sale or purchase of securities. Accordingly, the Debtors (and their agents, employees, members and professionals) are entitled to the protection of § 1125(e) of the Bankruptcy Code.

## *Voting*

9. Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Orders of this Court.

## *The Plan Satisfies the Requirements of the Bankruptcy Code*

10. Each of the Debtors, as proponents of the Plan, has satisfied its burden of proving the standards of § 1129(a) of the Bankruptcy Code by a preponderance of the evidence.

11. The Plan complies with all applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1).

12. The Plan is dated and identifies the Debtors as the proponents of the Plan. FED. R. BANK. P. 3016(a). The Debtors have complied with all provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2).

13. The Plan designates and classifies Claims and Equity Interests. 11 U.S.C. § 1123(a)(1). The classification of Claims and Equity Interests under the Plan complies with § 1122 of the Bankruptcy Code. Each Claim and Interest placed in a particular class pursuant to the Plan is substantially similar to the other Claims or Equity Interests, as the case may be, in such class. A reasonable basis exists for the classifications in the Plan.

14. The Plan specifies each class of Claims or Equity Interests that is not Impaired under the Plan. 11 U.S.C. § 1123(a)(2).

15. The Plan specifies the treatment of each class of Claims and Equity Interests that is Impaired under the Plan. 11 U.S.C. § 1123(a)(3).

16. The Plan provides the same treatment for each Claim or Interest of a particular class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such particular Claim or Interest. 11 U.S.C. § 1123(a)(4).

17. The Plan provides adequate means for its implementation. 11 U.S.C. § 1123(a)(5).

18. The Plan provides for the assumption and rejection of executory contracts and leases in a manner consistent with the Bankruptcy Code. 11 U.S.C. § 1123(b)(2).

19. The Debtors have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, the disclosure and solicitation requirements under §§ 1125 and 1126 of the Bankruptcy Code. 11 U.S.C. §§ 1129(a)(2), 1125, 1126.

20. The Plan has been proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3). The Plan has been proposed for valid business purposes, to effectuate the sale of the Debtors' business assets, to satisfy substantial obligations of the Debtors, and to provide relief under Chapter 11 to the Debtors and their Creditors and Interest Holders.

21. All payments made or to be made by the Debtors/Liquidating Trustee under the Plan, for services or for costs and expenses in or in connection with the Cases, or in connection with the Plan and incident to the Cases, have been approved by the Court or are subject to the approval of the Court as reasonable. 11 U.S.C. § 1129(a)(4).

22. The Debtors have disclosed that Jeff Compton will serve as the Liquidating Trustee under the Plan in accordance with 11 U.S.C. § 1129(a)(5). Jeff Compton is confirmed as the Liquidating Trustee with full authority to carry out the Plan.

23. For the avoidance of doubt, the Liquidating Trustee's authority to act as director/officer/manager of each of the Reorganized Debtors is solely an accommodation for administratively winding down the Reorganized Debtors and for no other purpose. No entity or person shall have any claims or other rights against the Liquidating Trustee or the Liquidating Trust Assets by virtue of this accommodation.

24. The Official Committee of Unsecured Creditors has also disclosed that the initial members of the Post-Confirmation Committee under the Plan shall be as follows: Archer Drilling, L.L.C.; Frank's International, L.L.C.; and Kenai Offshore Ventures, L.L.C.

25. The Plan does not alter any rates charged by the Debtors. Therefore, the Plan does not require any governmental approvals. 11 U.S.C. § 1129(a)(6).

26. With respect to each Impaired class of Claims or Equity Interests, each Holder of an Impaired Claim or Equity Interest in such class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. 11 U.S.C. § 1129(a)(7).

27. Each class of Claims and Equity Interests has accepted the Plan (11 U.S.C. § 1129(a)(8)(A)) or is not Impaired under the Plan (11 U.S.C. § 1129(a)(8)(B)). Equity Interests in Classes 5 and 6 are not anticipated to receive anything under the Plan and are deemed to reject the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

28. Except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that, with respect to a Claim of a kind specified in § 507 of the Bankruptcy Code, on the later of (i) the Effective Date; or (ii) such later date as the Debtors and the Holder of the Claim shall agree, the Holder of such Claim will receive on account of such Claim cash in an amount equal to the Allowed amount of such Claim subject to and in accordance with the terms of the Plan, except that such Claims representing liabilities incurred by the Debtors in the ordinary course of business after the Petition Date shall be paid according to their terms. 11 U.S.C. § 1129(a)(9)(A) and (B).

29. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors except as specifically set forth in the Plan. 11 U.S.C. § 1129(a)(ii).

30. The Plan has been accepted by Creditors and Interest Holders that hold at least two-thirds in amount and more than one-half in number of the Allowed Claims and Equity Interests that have voted to accept or reject the Plan. 11 U.S.C. § 1129(a)(8).

31. At least one class of Claims or Equity Interests that is Impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any Insider. 11 U.S.C. § 1129(a)(10).

32. The Liquidating Trustee shall timely pay on the Effective Date all pre-confirmation quarterly fees owed to the United States Trustee. 11 U.S.C. § 1129(a)(12). The Liquidating Trustee shall also timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Court enters a final decree closing the case(s), or enters an order either converting the case(s) to a case under chapter 7 or dismissing the case(s). After confirmation, the Liquidating Trustee shall file with the Court and shall transmit to the United States Trustee a true and correct statement of all disbursements for each quarter, or portion thereof, that the Debtors' cases remain open in a format prescribed by the United States Trustee. All cases other than Case No. 14-60041 shall be administratively closed. All objections to claims and other post-confirmation pleadings to be filed by or on behalf of the Debtors or the Liquidating Trust shall be filed in Case No. 14-60041.

33. The Debtors do not have obligations for the payment of retiree benefits, making § 1129(a)(13) of the Bankruptcy Code irrelevant. 11 U.S.C. § 1129(a)(13).

34. The Debtors are not required to pay any domestic support obligations pursuant to either order or statute, making § 1129(a)(14) of the Bankruptcy Code irrelevant. 11 U.S.C. § 1129(a)(14).

35. None of the Debtors in these Chapter 11 Cases are individual debtors pursuant to the Bankruptcy Code, making §1129(a)(15) of the Bankruptcy Code irrelevant. 11 U.S.C. § 1129(a)(15).

36. Each of the Debtors is either a moneyed, business or commercial corporation, limited liability company or limited partnership. Accordingly, the Plan satisfies the requirements of §1129(a)(16) of the Bankruptcy Code. 11 U.S.C. §1129(a)(16).

37. All applicable requirements of § 1129(a) of the Bankruptcy Code have been met.

38. The Plan filed by the Debtors is the only plan that has been filed in these chapter 11 cases satisfies the requirements of subsection (a) of § 1129 of the Bankruptcy Code. Accordingly, the requirements of §1129(c) of the Bankruptcy Code have been satisfied. 11 U.S.C. § 1129(c).

39. The modifications and clarifications made herein to the Plan do not cause the Plan to fail to meet the requirements of §§ 1122 and 1123 of the Bankruptcy Code and, pursuant to § 1127 of the Bankruptcy Code, do not adversely change the treatment of any Claim of any Creditor or the interest of any Equity Interest Holder who has not accepted the modification. FED. R. BANKR. P. 3019.

40. The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933, as amended.

## *Substantive Consolidation*

41. The substantive consolidation of the Debtors' estates provided for in the Plan is in the best Equity Interests of the Debtors and their estates. The Court, after due deliberation and sufficient cause appearing therefor, finds that: all of the Debtors are either directly or indirectly owned by the same Debtor parent and share employees, premises, operating methods, and financial obligations, and file consolidated financial statements; all of the Debtors are borrowers or guarantors of the estates' major secured debt to AIX which, pursuant to the AIX/Meridian Settlement, has liens on substantially all of the Debtors' assets; creditors dealt with the entities as a single economic unit and often did not rely on their separate identity in extending credit; and that, the Debtors commingled assets and business functions and transferred assets without formal observance of corporate formalities such that there would be a high degree of difficulty in segregating and ascertaining individual assets and liabilities; and the affairs of the Debtors are so entangled that substantive consolidation of the Debtors' estates is equitable, in the best interests of the estates, and is necessary to prevent harm or prejudice or otherwise to confer a benefit on the estates.

Accordingly, it is hereby **ORDERED THAT**:

## *Approval of the Disclosure Statement*

42. The Disclosure Statement is APPROVED on a final basis under Bankruptcy Code § 1125, and all objections, statements, and reservations of rights with respect to the Disclosure Statement are overruled.

## *Confirmation of the Plan*

43. The Plan, a copy of which is attached hereto as **Exhibit 1**, as modified herein, is confirmed in all respects, regardless of whether specific reference is made herein to a particular article, paragraph, exhibit or provision of the Plan. The terms of the Plan are incorporated by reference into, and are an integral part of, this Order.

44. Except as set forth herein, all capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan or, if not defined therein, the AIX/Meridian Settlement or the Purchase and Sale Agreement.

45. The substantive consolidation of the Debtors and their respective Estates for purposes of voting, confirmation, objections to Claims and Distributions, as provided for in the Plan and described more particularly in Article 7.2 of the Plan, is APPROVED.

46. The Plan's classification scheme is APPROVED. The treatment of all Claims and Equity Interests as provided in the Plan is APPROVED. All Claims and Equity Interests are therefore classified and treated as set forth in the Plan

47. Except as otherwise set forth herein, the Debtors, the Reorganized Debtors and the Liquidating Trustee are authorized and directed to implement the Plan in accordance with the terms thereof and to take any and all actions contemplated to be taken under the Plan. The Liquidating Trustee is authorized to act on behalf of the Liquidating Trust.

48. Confirmation of the Plan has the effect outlined in Section 10 of the Plan, which is consistent with Bankruptcy Code §§ 105, 524, 1123, 1129, and 1141. The discharges, protections and indemnifications in the Plan are APPROVED and shall become effective as of the Effective Date without any further action by this Court or any Entity.

49. The appointment of the Post-Confirmation Committee is approved in all respects and such committee is authorized to carry out its rights and duties as set forth in the Plan.

50. The provisions of the Plan and this Order are binding on the Debtors, the Reorganized Debtors, the Liquidating Trustee and any Holder of a Claim or Interest, whether or not the Claim or Interest is Impaired under the Plan and whether or not the Holder of such Claim or Interest has accepted the Plan.

51. Notwithstanding any other language to the contrary in this Order or the Plan, including but not limited to Section 10.2 of the Plan, nothing in this Order or the Plan will have any impact on Cook Inlet Region Inc.'s ("CIRI"), the Debtors', the Committee's or the Liquidating Trustee's rights, claims and defenses in (i) the lawsuit CIRI filed in October 2013 against the Debtors in the Superior Court for the State of Alaska in the Third Judicial District at Anchorage, Case No. 3AN-13-09911 CI; and (ii) the administrative proceeding filed by CIRI against the Debtors with the Alaska Oil and Gas Conservation Commission, Docket No. CO-13-08.

52. All objections to confirmation of the Plan and all statements and reservations of rights with respect to the Plan that have not been withdrawn prior to the entry of this Order or

that are not cured by the relief granted herein are overruled in all respects. All withdrawn objections are deemed withdrawn with prejudice.

53. On the Effective Date, the Debtors and the Liquidating Trustee are authorized to consummate the Plan and the transactions contemplated thereby.

### *Creation of the Liquidating Trust*

54. On the Effective Date, the Liquidating Trust (as defined in the Plan) shall be created. The Liquidating Trust shall be governed by the Liquidating Trust Agreement attached to the Plan as Plan Exhibit C (the "Liquidating Trust Agreement"), the Plan and this Order. The terms of the employment of the Liquidating Trustee are set forth in the Liquidating Trust Agreement. On the Effective Date, the Debtors shall transfer the Liquidating Trust Assets (as defined in the Plan) to the Liquidating Trust. Except as specifically set forth herein or in the Plan, Holders of Allowed Priority Unsecured Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Claims or Equity Interests in Classes 1(a), 2, 3, 4 or 6 shall look solely to the Liquidating Trust for the satisfaction of their Claims. For federal income tax purposes, the transfer of the identified assets to the Liquidating Trust will be deemed to be a transfer to the Holders of Allowed Claims (who are the Liquidating Trust beneficiaries), followed by a deemed transfer by such beneficiaries to the Liquidating Trust.

55. Notwithstanding anything to the contrary in the Liquidating Trust Agreement, the Plan or this Confirmation Order, (i) the Assets listed in Schedule 1 to this Confirmation Order (the "Excluded Oil & Gas Leases") shall not be Liquidating Trust Assets; (ii) the Debtors shall not transfer the Excluded Oil & Gas Leases to the Liquidating Trust; and (iii) the Liquidating Trustee shall not have any authority or duty to with regard to the Excluded Oil & Gas Leases or Assets determined pursuant to Article 7.4.1.4 of the Plan not to be Liquidating Trust Assets (collectively with the Excluded Oil & Gas Leases, the "Legacy Assets"); provided, however, that Liquidating Trust Assets may be used solely as an accommodation to pay the reasonable fees and expenses of the ministerial act of winding down the Reorganized Debtors and for no other purpose, and neither the Liquidating Trustee in any capacity nor the Liquidating Trust Assets shall be subject to any debts, liabilities or obligations whatsoever in connection with the Legacy Assets or the Reorganized Debtors.

56. Notwithstanding anything to the contrary contained in the Plan, the Liquidating Trust Assets shall not include the proceeds of or any rights to payment under the Alaska Clear & Equitable Shares incentive program authorized pursuant to Alaska's Clear and Equitable Share Act, Alaska Statutes § 43.55 *et seq.*, that may be owed to any Debtors for which the Alaska Industrial Development and Export Authority or its successors and assigns (together, "AIDEA"), All American Oilfield Associates, LLC or its successors and assigns (together, "AAOA"), AIMM Technologies, Inc. or its successors and assigns (together, "AIMM"), or MagTec Alaska or its successors and assigns (together, "MagTec") may have valid, perfected liens or security interests or superior ownership rights, trust claims (including constructive trust claims), and/or beneficial interests. All proceeds of ACES credits that are subject to the rights or claims of the competing parties as listed above shall be held by the Reorganized Debtors until such time as such liens, security interests, ownership rights, trust claims, and/or beneficial interests (and the relative priority thereof) are determined by a written agreement of all affected parties or proven

to be valid, perfected, and/or superior to the Debtors' rights and claims pursuant to a final, non-appealable judgment of a court of competent jurisdiction. Further, if such liens, security interests, ownership rights, trust claims, and/or beneficial interests of AIDEA, AAOA, AIMM and/or MagTec are determined by a written agreement of all affected parties or a final, non-appealable judgment of a court of competent jurisdiction to not be valid, perfected, and/or superior to the rights and claims of the Debtors or AIX in such ACES proceeds and/or payment rights, then such ACES proceeds and/or payment rights will be transferred to AIX or the Liquidating Trust in accordance with the AIX/Meridian Settlement.

57. All transfers to the Liquidating Trust shall be free and clear of all liens, claims, interests and encumbrances except as specifically provided otherwise in the Plan or this Order. Whether or not set forth in the Plan, any overriding royalty interests transferred to the Liquidating Trust shall remain subject to any and all liens and security interests, if any, of AIDEA. Whether or not set forth in the Plan, any Assets transferred to the Liquidating Trust or held by the Reorganized Debtors shall remain subject to any valid, perfected liens or security interests, if any, of Magtec. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, a) MagTec shall be entitled to seek relief from the Bankruptcy Court to the extent it is a party in interest; and b) any and all of MagTec's claims, defenses, counterclaims, and causes of action are preserved only to the extent that they are asserted to reduce or defeat claims against MagTec in any action that may be commenced by the Liquidating Trust against MagTec.

*Executory Contracts and Unexpired Leases*

58. On the Effective Date, all executory contracts and unexpired leases that are not assumed under the Plan are rejected, unless otherwise dealt with by the Plan or this Order, or any other Order of the Court entered prior to the Effective Date, or which is the subject of a motion to assume pending on the Effective Date.

59. Each assumed executory contract shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such contract or lease and (b) all contracts or leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem related to such premises.

60. Damages arising from the rejection of an executory contract or unexpired lease shall be a General Unsecured Claim against the Debtors unless subordinated under applicable law. Further, as provided in Article 6.3 of the Plan, any Claim for damages arising from the rejection of an executory contract or unexpired lease must be asserted in a proof of claim filed with the Bankruptcy Court on the earlier of: (i) the time set in any prior order of the Court setting a bar date for any previously rejected Executory Contract or Unexpired Lease; or (ii) within thirty (30) days after the Effective Date. Any Claims not filed within such times shall be forever barred from assertion against the Debtors, the Liquidating Trust, the Liquidating Trustee or the Reorganized Debtors.

## *Miscellaneous*

61.   Pursuant to § 1146 of the Bankruptcy Code, any issuance, transfer, or exchange of any security under the Plan or the making or delivery of any instrument of transfer under the Plan shall not be taxed under any law imposing a stamp tax or other similar tax.

62.   For good cause shown, the limitations of Rule 6004 of the Federal Rules of Bankruptcy Procedure are waived. This Order is not stayed and shall become effective immediately upon its entry. The Effective Date of the Plan shall be the day selected by the Debtors, the Committee and AIX that is no earlier than the first Business Day after all conditions specified in Article 11 of the Plan have been satisfied or waived.

63.   Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code and the provisions of this Order, the Plan and all Plan-related documents (including, but not limited to, the Plan Supplement documents) shall be, and hereby are, valid, binding and enforceable notwithstanding any otherwise applicable non-bankruptcy law. The Plan and the Plan Supplement documents are hereby approved. The proponents of the Plan reserve the right to alter, amend, or modify the Plan and the Plan Supplement at any time prior to the Effective Date in accordance with applicable law.

64.   The failure to reference or discuss any particular Plan provision in this Order shall have no effect on the validity, binding effect and enforceability of such provision and such provision shall have the same validity, binding effect and enforceability as provisions of the Plan expressly approved herein.

65.   No Claim shall be an Allowed Claim except for a Claim that (i) is specifically identified in the Plan as an Allowed Claim; (ii) is Allowed pursuant to the terms of this Order; (iii) is Allowed by separate Order of this Court; or (iv) following the deadline for the filing of objections to Claims, is a Claim for which either (A) a timely proof of claim has been filed and no objection has been filed; or (B) is scheduled by the Debtors as undisputed, not contingent and liquidated and for which no objection has been filed.

66.   Except as otherwise provided in the Plan, to the extent the Confirmation Order and/or the Plan are inconsistent with the Disclosure Statement, any other agreement entered into between the Debtors and any third party, the Plan controls the Disclosure Statement and any such agreements and the Confirmation Order (and any other orders of the Bankruptcy Court) controls the Plan. To the extent that the Plan or the Confirmation Order conflicts with the Liquidating Trust Agreement, first, the Plan shall control the Liquidating Trust Agreement and the Confirmation Order shall control the Plan. To the extent the AIX/Meridian Settlement is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtors and any third party, the AIX/Meridian Settlement shall control.

67.   Notwithstanding anything to the contrary in the Plan or elsewhere in this Order, the Debtors and/or AIX, as the case may be, may within ninety (90) calendar days of the entry of this Order, submit to the State of Alaska pursuant to its Clear and Equitable Share Act, Alaska Statutes § 43.55 *et seq.*, any and all requests and/or applications for ACES credits, reimbursements or rebates to which the Debtors and/or AIX are, or may arguably be, entitled

under the State of Alaska's ACES program. Furthermore, to the extent that the Debtors and/or AIX decline to submit an ACES request and/or application for ACES credits, reimbursements, or rebates based on or derived from the unpaid invoices of AAOA, AIMM or MagTec, then the Debtors and/or AIX, as the case may be, hereby assign to AAOA, AIMM and/or MagTec, as the case may be, the right to submit such application(s) to the State of Alaska in the Debtors' name(s) and/or on their behalf. If AAOA, AIMM and/or MagTec submit such application(s) to the State of Alaska, neither the Debtors nor AIX will oppose or otherwise impair the right of AAOA, AIMM and/or MagTec to do so, and, further, any ACES proceeds or rights to payment that may ultimately be derived from such application(s) submitted by AAOA, AIMM and/or MagTec and which are based on or derived from the unpaid invoices of AAOA, AIMM or MagTec, as the case may be, will not become Liquidating Trust Assets and may be retained by AAOA, AIMM and/or MagTec, as the case may be, as partial payment on their respective Allowed Claims.

68. Nothing in this Confirmation Order or the Plan will impair or diminish (i) that certain *Order Granting Debtors' Emergency Motion (1) Under 11 U.S.C. § 363(B) to Authorize the Debtors to Advance Defense Costs to Directors and (2) Under 11 U.S.C. § 362(D) for Relief From Stay to Allow Insurers to Advance Defense Costs to Directors* (Related Dkt. No. 377), signed on October 7, 2014, at Docket No. 423 and (ii) *Order Regarding Emergency Motion to Quash and for Protective Order and Motion for Rule 2004 Examination to be Taken by Remote Means* (Related Dkt. No. 350) signed on September 17, 2014, at Docket No. 376.

69. Gavin Wilson, Patrick O'Connor and Alan Stein (the "NEDs") reserve their rights, if any, to seek recovery on their respective claims in the Cases from the Debtors, any insurance available to the Debtors, and the Trust; provided, however, that the Liquidating Trust, Liquidating Trustee, the Committee, the Post-Confirmation Committee, and any other party in interest reserve the right to interpose any objection, defense or any other argument in opposition to any rights or recoveries of the NEDs, and all such rights are hereby preserved and reserved.

70. The provisions of this Order are integrated with each other and are nonseverable and mutually dependent.

71. This Order is hereby declared to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

72. The Liquidating Trustee, on behalf of the Liquidating Trust, and the Post-Confirmation Committee are authorized pursuant to § 1142(b) of the Bankruptcy Code to (i) take all action which requires the approval of this Court to effect the Plan; and (ii) issue, execute, deliver, file or record any documents, and to take any action necessary or appropriate to implement, effectuate and consummate the Plan, and the matters contemplated by this Order, in accordance with their respective terms, whether or not specifically referred to in the Plan or any exhibit thereto and without further application to or order of this Court.

73. The Liquidating Trustee may destroy or otherwise abandon any files, documents or electronic information following the expiration of twenty (20) days from the date that a notice of intent to destroy and/or abandon such records is filed with the Court. If an objection is filed,

the Liquidating Trustee shall not destroy and/or abandon such files, documents or electronic information until the Bankruptcy Court has considered the objection.

74.  The Debtors shall promptly serve notice of the entry of this Order pursuant to Rule 2002(f)(7) of the Federal Rules of Bankruptcy Procedure on all Creditors, Interest Holders and other parties in interest. The Liquidating Trustee shall mail a copy of this Order and Notice of the Effective Date to all known Holders of Claims and Equity Interests (which have not become Disallowed as of the date of mailing). Such notice shall be mailed within 5 Business Days of the Effective Date. In addition, notice of the entry of the Effective Date shall be published in the Houston Chronicle, which publication shall constitute constructive notice of the Effective Date.

75.  After the date of this Order, this Court shall retain jurisdiction over these Chapter 11 Cases according to applicable law, including jurisdiction to interpret and enforce the provisions of this Order.

76.  To the fullest extent allowed by applicable law, and except as otherwise provided in the Plan, the Debtors, the Reorganized Debtors, the Liquidating Trust and the Liquidating Trustee reserve any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any Distribution Date, including, without limitation, any and all claims, Coverage Claims, and/or Causes of Action for relief that the Debtors, the Reorganized Debtors, the Liquidating Trust or the Liquidating Trustee may have against or on behalf of any director, officer, any insurer under any D&O Insurance policy, or any other Person. The entry of this Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Debtors, the Reorganized Debtors, the Liquidating Trust or the Liquidating Trustee relating to any Claims, Coverage Claims, or Causes of Action. The Liquidating Trustee shall constitute, (i) the representative of the Liquidating Trust for purposes of asserting and/or enforcing Claims and Causes of Action, and (ii) the representative of the Reorganized Debtors for purposes of asserting and/or enforcing Coverage Claims, under section 1123(b)(3)(B) of the Bankruptcy Code.

77.  Notwithstanding Bankruptcy Rule 3020(e) or otherwise, and based on the record at the Confirmation Hearing, this Order shall be effective and enforceable immediately upon its entry.

SIGNED: __1/13/15__

_____
UNITED STATES BANKRUPTCY JUDGE

## Schedule 1 to the Confirmation Order
## ("Excluded Oil & Gas Leases")

| Lease | Effective Date | Expiration Date | Gross Acres | Net Acres |
|---|---|---|---|---|
| **West Eagle Unit** | | | | |
| ADL-391625 Tract 2 | 3/1/2011 | HBU | 2,557 | 2,557 |
| ADL-392387 (Seg ADL 391145) | 10/1/2007 | 10/1/2014 | 2,535 | 2,535 |
| ADL-392388 (Seg ADL 391144) | 10/1/2007 | 10/1/2014 | 1,911 | 1,911 |
| ADL-392389 (Seg ADL 391625) | 3/1/2011 | 3/1/2018 | 3,091 | 3,091 |
| ADL 391144 | 10/1/2007 | 10/1/2014 | 3,100 | 3,100 |
| ADL 391145 | 10/1/2007 | 10/1/2014 | 3,186 | 3,186 |
| | | | | |
| **Southern Cross Unit** | | | | |
| ADL-391107 (Block B) | 10/1/2007 | 10/1/2014 | 1,280 | 1,280 |
| ADL-17595 (Seg 2) (Block A) | 2/1/1962 | HBP | 2,470 | 1,235 |
| ADL-391108 (Block B) | 10/1/2007 | 10/1/2014 | 1,912 | 956 |
| ADL-391788**(Block B) | 10/1/2007 | 10/1/2014 | 630 | 630 |
| | | | | |
| **North Cook Inlet** | | | | |
| ADL-17589 (Blocks A & B) | 2/1/1962 | HBU | 5,002 | 5,002 |
| ADL-17590 (Block B) | 3/1/1962 | HBU | 4,800 | 4,800 |
| ADL-18740 (Block A) | 9/1/1962 | HBU | 5,120 | 5,120 |
| ADL-18741 (Blocks A & B) | 9/1/1962 | HBU | 5,120 | 5,120 |
| ADL-37831 (Blocks A & B) | 9/1/1962 | HBU | 3,326 | 3,326 |
| | | | | |

| | | | | |
|---|---|---|---|---|
| **Texas Lee County** | | | | |
| Alexander Unit | | | 333 | 175 |
| | | | | |
| **Texas MataGorda County** | | | | |
| Swordfish II | | | 720 | 640 |