IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: § | Chapter 11 | |
| § | | |
| BUCCANEER RESOURCES, LLC, § | Case No. 14-60041 (DRJ) | |
| et al.[1] § | | |
| § | | |
| Debtors. § | Jointly Administered | |
| § | | |
| AIX ENERGY, LLC § | | |
| § | | |
| Plaintiff. § | | |
| § | | |
| v. § | Adv. Pro. No. 15-_____ | |
| § | | |
| ALASKA INDUSTRIAL § | | |
| DEVELOPMENT AND EXPORT § | | |
| AUTHORITY, BUCCANEER § | | |
| RESOURCES, LLC, *ET AL*. § | | |
| § | | |
| Defendants. § | | |

## ORIGINAL COMPLAINT

AIX Energy, LLC ("AIX") files this original complaint against the Alaska Industrial Development and Export Authority ("AIDEA") and the Debtors seeking a declaratory judgment enforcing the terms of this Court's orders.

### Parties

1. AIX may be served in this adversary proceeding through the undersigned counsel.

2. Defendant AIDEA is a public corporation of the State of Alaska and a body corporate and politic constituting a political subdivision with the Alaska Department of Commerce, Community and Economic Development with separate and independent legal

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: (i) Buccaneer Energy Limited (0107); (ii) Buccaneer Energy Holdings, Inc. (7170); (iii) Buccaneer Alaska Operations, LLC (7562); (iv) Buccaneer Resources, LLC (8320); (v) Buccaneer Alaska, LLC (4082); (vi) Kenai Land Ventures, LLC (2661); (vii) Buccaneer Alaska Drilling, LLC (7781); (viii) Buccaneer Royalties, LLC (5015); and (ix) Kenai Drilling, LLC (6370).

existence. AIDEA may be served through its executive director, Ted Leonard, at 813 West Northern Lights Blvd., Anchorage, Alaska 99503.

3. A courtesy copy of this complaint will be sent to AIDEA's counsel of record in the main bankruptcy case, Matthew Tashman, Reed Smith LLP, Three Logan Square, 1717 Arch Street, Suite 3100, Philadelphia, Pennsylvania 19103.

4. The Debtors have agreed to accept service through their counsel, William Greendyke, Norton Rose Fulbright US LLP, 1301 McKinney, Suite 5100, Houston, Texas 77010.

## Jurisdiction and Venue

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This adversary is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), (L), and (O). AIX consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

6. Inasmuch as the Debtors are a mere stakeholder of the property that is the subject of this civil action, it is anticipated that the Debtors will seek to interplead the funds into the registry of the Court under 28 U.S.C. § 1335, which AIX does not oppose. Section 1335 provides an additional basis for this Court's jurisdiction because (i) two adverse claimants of diverse citizenship claim entitlement to the property that the Debtors hold, (ii) the value of the property exceeds the jurisdictional threshold for this Court, and (iii) the Debtors will deposit the property in the registry of the Court and agree to comply with all future orders of the Court regarding the property.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

**Summary of the Complaint**

8. The Debtors are in possession of $1,872,244.00 in proceeds related to credits under Alaska's Clear and Equitable Share program on which both AIX and AIDEA assert a lien ("<u>ACES Credits</u>").  Pursuant to the terms of the Confirmation Order, the Final Cash Collateral Order and the Settlement Order approving AIX's settlement with the Official Committee of Unsecured Creditors ("<u>Committee</u>"), AIX is the rightful owner of the ACES Credits, free and clear of all liens, and the Debtors are obligated to turnover these funds to AIX.  Although the Debtors are mere stakeholders of the ACES Credits, the Debtors have not turned over the ACES Credits to AIX because of AIDEA's ongoing assertion of an alleged lien—notwithstanding its failure to take timely action to establish the existence and priority of such an alleged lien during this case.

9. AIX seeks a declaratory judgment enforcing the Court's previous orders that established its prior lien rights in the ACES Credits, including the Confirmation Order, Final Cash Collateral Order and the Settlement Order approving the AIX/Committee settlement, and requiring the Debtors, or, if the funds have been interpleaded, the clerk of court, to transfer the ACES Credits to AIX.

10. Upon information and belief, the Debtors intend to seek relief in the nature of interpleader so that they may deposit the ACES Credits in the registry of the Court before the effective date of the plan.

**Statement of Relevant Facts**

11. On January 25, 2013, the Debtors entered into a credit facility totaling $100 million with Chicago-based Victory Park Capital (the "<u>Victory Park Facility</u>").

12. In early 2014, the Debtors executed an Amended and Restated Financing Agreement with Meridian Capital CIS Fund, an affiliate of Meridian Capital International Fund (collectively, "Meridian"), dated as of January 24, 2014, under which Meridian took assignment of the Victory Park Facility on amended terms (the "Meridian Facility").

13. On April 30, 2014, AIX took assignment of the Meridian Facility (the "AIX Facility"). The Debtors' obligations under the AIX Facility were secured by liens on substantially all of the Debtors' assets, including the ACES Credits.

14. On May 31, 2014, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. AIDEA was scheduled as a contingent, unliquidated, and disputed general unsecured creditor in the Buccaneer Alaska Drilling, LLC case (Case No. 14-60041, Doc. No. 144, p. 10), the Buccaneer Energy Limited case (Case No. 14-60041, Doc. No. 134, p. 12), and the Buccaneer Royalties, LLC case (Case No. 14-60041, Doc. No. 146, p. 9).

15. On September 2, 2014, the Court entered its Order Approving Joint Emergency Motion to Compromise Controversy Under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Settlement Order"). Paragraph 4 of the Settlement Order states, in relevant part:

> To the extent available and in excess of any amounts budgeted under any cash collateral budget through the effective date of a chapter 11 plan (including any allowed variances), the Debtors shall use all commercially reasonable efforts to reserve and segregate the amount of $10 million cash (the "Settlement Payment") for the Creditors Trust from (i) the proceeds of credits under Alaska's Clear and Equitable Share program (the "ACES Credits") (net of (a) any amounts authorized under any approved cash collateral budget (including any allowed variances) through the effective date of a chapter 11 plan which budget shall include amounts for Debtors' professionals, (b) any retainers held by any professionals in these cases, and (c) **any allowed secured claim in favor of Alaska Industrial Development and Export Authority ("AIDEA") relating to any ACES Credits**) and (ii) . . . (the amounts under (i) and (ii) above are collectively defined as the "Available Cash Collateral"). **The remaining Available Cash Collateral in the Debtors' estate**, net of the Settlement Payment and sufficient reserves for allowed yet unpaid administrative claims and expenses of the Debtors' chapter 11 cases or any amounts held in retainer accounts, through

4803213v3

the closing of the sale of the Assets as set forth below, **shall be paid to AIX at closing of the sale of the Assets** (as defined below).

16. AIDEA filed two unsecured claims against the Debtors, (i) an unsecured claim in the amount of $23,610,026.03 against Buccaneer Energy, Ltd. (Case No. 14-60042, Claim No. 18) based on a guaranty payment under the KOV LLC Agreement, and (ii) an unsecured claim in the amount of $11,088,802.08 against Buccaneer Alaska Drilling, LLC (Case No. 14-60047, Claim No. 8) based on the Four Well Commitment Agreement dated November 8, 2011.

17. On September 24, 2014, the Court entered its Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection to AIX Energy, LLC (Doc. No. 392) (the "<u>Final Cash Collateral Order</u>"). Paragraph 8 of the Final Cash Collateral Order states:

> <u>Validity of Liens</u>. As of the Petition Date, the Debtors (and, as described above, the Committee – subject to the terms of the Compromise Order) stipulate and agree, and **the Court hereby finds, that** (a) the Credit Documents are valid and binding agreements and obligations of the Debtors, and are ratified, affirmed and enforceable against the Debtors and the Prepetition Collateral in accordance with their respective terms, (b) **the Debtors' Prepetition Indebtedness to AIX is** (except as otherwise provided herein or specifically permitted under the Credit Documents and specifically subject to any rights or interests Macquarie Bank Limited ("<u>MBL</u>") may have in or to the funds on deposit in the MBL cash cover account ending in XXX-3425 and any interest earned thereon (the "<u>MBL Cash Cover Account</u>")) **secured by perfected first priority liens and security interests in and to the Prepetition Collateral, which liens and security are valid, perfected, enforceable and non-avoidable,** (c) **pursuant to the Credit Documents, AIX has legal, valid and enforceable, allowable first priority secured claims against the Debtors secured by the Prepetition Collateral**, (d) **AIX's secured claim is in the amount of $63,842,290.61** (the "<u>Secured Claim</u>"), (e) the Debtors' obligations under the Credit Documents constitute allowable claims against the Debtors and are not subject to subordination pursuant to section 510(c) of the Bankruptcy Code and (f) the Debtors (or any party acting by, through or on behalf of the Debtors) and the Committee shall not assert any claims, counterclaims, setoffs, surcharge claims, recharacterization claims or defenses of any kind or nature which would in any way affect the validity, enforceability and non-avoidability of the Prepetition Indebtedness, Secured Claim or AIX's security interests in and liens on the Prepetition Collateral or reduce or affect the Debtors' obligation to pay the Prepetition Indebtedness and **any such claims regarding the extent, validity, avoidability, or priority of the Prepetition Indebtedness, Secured Claim or AIX's security interests in and**

**liens on the Prepetition Collateral which otherwise could have been asserted by any party in interest, with the exception of any claims timely asserted by Cook Inlet Region, Inc. in Adversary No. 14-6002 and, if the conditions precedent set forth in the Compromise Order are not met, any claims, counterclaims, setoffs, or causes of action asserted by the Committee against AIX (whether in an adversary proceeding or the main case), are hereby deemed waived, released and forever barred**; provided, however, that AIX's recovery on the Secured Claim shall be limited as set forth in the Compromise Order.

18. The term "Prepetition Collateral" is defined in paragraph 6 of the Final Cash Collateral Order as "substantially all of the Debtors' assets, **including the Cash Collateral and credits under Alaska's Clear and Equitable Share program**."

19. On January 13, 2015, the Court entered its Order Finally Approving First Amended Disclosure Statement and Confirming First Amended Joint Chapter 11 Plan (Doc. No. 591) (the "Confirmation Order"). Paragraph 56 of the Confirmation Order states:

> Notwithstanding anything to the contrary contained in the Plan, the Liquidating Trust Assets shall not include the proceeds of or any rights to payment under the [ACES] incentive program authorized pursuant to Alaska's Clear and Equitable Share Act, Alaska States § 43.55 *et seq.*, that may be owed to any Debtors for which the Alaska Industrial Development and Export Authority or its successors and assigns (together, "AIDEA"), All American Oilfield Associates, LLC or its successors or assigns (together, "AAOA"), AIMM Technologies, Inc. or its successors and assigns (together, "AIMM"), or MagTec Alaska or its successors or assigns (together, "MagTec") may have valid, perfected liens or security interests or superior ownership rights, trust claims (including constructive trust claims), and/or beneficial interests. All proceeds of ACES credits that are subject to the rights or claims of the competing parties as listed above shall be held by the Reorganized Debtors until such time as such liens, security interests, ownership rights, trust claims, and/or beneficial interests (and the relative priority thereof) are determined by a written agreement of all affected parties or proven to be valid, perfect, and/or superior to the Debtors' rights and claims pursuant to a final, non-appealable judgment of a court of competent jurisdiction. **Further, if such liens, security interests, ownership rights, trusts claims, and/or beneficial interest of AIDEA, AAOA, AIMM and/or MagTec are determined by a written agreement of all affected parties or a final, non-appealable judgment of a court of competent jurisdiction to not be valid, perfected, and/or superior to the rights and claims of the Debtors or AIX in such ACES proceeds and/or payment rights, then such ACES proceeds and/or payment rights will be**

**transferred to AIX or the Liquidating Trust in accordance with the AIX/Meridian Settlement**.

20. Upon information and belief, AIDEA recently entered into a settlement agreement with Ezion Holdings Limited that satisfies all debts owed to AIDEA pursuant to the Kenai Offshore Ventures, LLC Agreement ("<u>KOV LLC Agreement</u>").

### Request for Declaratory Judgment

21. Paragraphs 1 through 20 are hereby incorporated as if fully set forth herein.

22. Pursuant to 28 U.S.C. § 2201 and 11 U.S.C. § 105(a), this Court has the power to declare and adjudicate the rights and obligations of the parties hereto and to grant such other and further relief as may be necessary to enforce the rights and obligations of parties.

23. Pursuant to the terms of the Settlement Order, the Debtors are obligated to turn over all remaining "Available Cash Collateral" to AIX. The term Available Cash Collateral is defined to include all of the ACES Credits net of "any allowed secured claim in favor of Alaska Industrial Development and Export Authority ("AIDEA") relating to any ACES Credits."

24. AIDEA was not scheduled as a secured creditor and has not filed a secured claim against the Debtors. Moreover, AIX's liens on the ACES Credits are superior in priority to AIDEA's asserted liens pursuant to the Final Cash Collateral Order as set forth above. AIX's allowed secured claim of $63,842,290.61 has not been fully satisfied from Available Cash Collateral and proceeds from the sale of AIX's collateral. As such, AIX's first priority liens in the Prepetition Collateral, including the ACES Credits, will not be fully satisfied in this case and, consequently, any inferior lien AIDEA may have had in the ACES Credits is eliminated as a matter of law. Finally, on information and belief, AIDEA recently entered into a settlement agreement that fully satisfied all of the Debtors' liability to it under the KOV LLC Agreement which would eliminate even its unsecured claims. Accordingly, AIDEA does not have an

"allowed secured claim" and all of the ACES Credits qualify as Available Cash Collateral and must be turned over to AIX.

25. Paragraph 56 of the Confirmation Order provides that the proceeds of the disputed ACES Credits shall be retained by the Debtors until there is either a written agreement of the parties or "a final, non-appealable judgment of a court of competent jurisdiction" regarding the validity, perfection and priority of such alleged liens.

26. The Final Cash Collateral Order is exactly that—a final order determining that AIX's liens in the ACES Credits are valid and superior to all other parties, including AIDEA. Specifically, the Court found and held in the Final Cash Collateral Order that the Debtors' indebtedness under the AIX Facility was "secured by perfected first priority liens and security interests in and to the Prepetition Collateral, which liens and security are valid, perfected, enforceable and non-avoidable." As previously stated, the term "Prepetition Collateral" includes the ACES Credits.

27. Alternatively, and solely in the event the Final Cash Collateral Order somehow does not constitute "a final, non-appealable judgment of a court of competent jurisdiction" sufficient to adjudicate this lien priority issue, AIX seeks a declaratory judgment herein to declare AIX's prior lien rights to the ACES Credits.

28. After there is a court order finding that AIX's liens in the ACES Credits are valid and superior to all other parties, the Confirmation Order requires the Debtors to transfer the proceeds of the ACES Credits to AIX in accordance with the terms of the Settlement Order.

Accordingly, AIX requests the Court to (i) enter a declaratory judgment as set forth above, (ii) order the Debtors or, if the funds have been interpleaded, the clerk of court to deliver

8

the ACES Credits to AIX, (iii) award AIX attorneys' fees, costs and expenses, and (iv) grant AIX such other relief as is just.

**Dated: February 19, 2015.**

Respectfully submitted,

**Porter Hedges LLP**

By: /s/ Joshua W. Wolfshohl
Joshua W. Wolfshohl
State Bar No. 24038592
Aaron J. Power
State Bar No. 24058058
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 228-1331 (fax)

**Counsel for AIX Energy, LLC**