

ENTERED
12/10/2015

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 14-60041 |
| **BUCCANEER RESOURCES, LLC,** *et al* | § | CHAPTER 11 |
| | § | Jointly Administered |
| Debtor(s). | § | DAVID R. JONES |

### MEMORANDUM OPINION
**(Docket Nos. 454, 517 and 655)**

    Before the Court is the Application of Patrick O'Connor, Gavin Wilson and Alan Stein for Reimbursement of Fees and Expenses in Connection with the Court's Rule 2004 Order, as subsequently modified and corrected. After considering the pleadings, the evidence presented and the arguments of counsel, the Court will grant partial relief as set forth below. An order consistent with this memorandum opinion will issue.

### Procedural Background

    The Debtors filed nine voluntary chapter 11 petitions on May 31, 2014 [Docket No. 1]. The Court approved the joint administration of the cases by Order entered June 2, 2014 [Docket No. 14].

    One of the Debtors, Buccaneer Energy, Limited, is an Australian public company. On July 2, 2014, the Federal Court of Australia issued its finding recognizing these jointly administered cases as a foreign main proceeding pursuant to § 6 of the *Cross-Border Insolvency Act 2008* (Cth) (the "Act") and clause 1 of Article 17 of the Model Law on Cross Border Insolvency of the United Nations Commission on International Trade Law, set out in the Annex to United Nations General Assembly Resolution A/RES/52/158 (1997) and in Schedule 1 to the Act [Docket No. 209].

    On the petition date, the Debtors were governed by a three-member board of directors. Two of the directors reside in Perth, Australia. The third director resides in London, England.

    The United States Trustee (the "UST") established an Official Committee of Unsecured Creditors (the "Committee") with five original members on or about June 10, 2014 [Docket No. 77]. An Amended Notice of Appointment of Committee of Unsecured Creditors was subsequently filed by the UST later in the day on June 10, 2014 [Docket No. 79]. The Committee immediately hired counsel and became very active in the case.

    On or about July 7, 2014, the Committee noticed each of the Debtors' board members for their depositions at the Houston offices of the Committee's counsel pursuant to three separately issued "Subpoena(s) to Testify at a Deposition in a Bankruptcy Case (or Adversary Proceeding)"

delivered to Debtors' counsel.  The depositions were scheduled for July 17, 18 and 21, 2014 [Docket No. 210].

Unable to reach an agreement with the Committee regarding the scheduling of the depositions, the Debtors filed their Emergency Motion to Quash and for Protective Order and Motion for Deposition to be Taken by Remote Means (the "Motion to Quash") on July 14, 2014 [Docket No. 210].  On July 16, 2014, the Committee filed its response to the Motion to Quash insisting that the directors appear in Houston and that the depositions were "critically important to the Committee in connection with the August 1, 2014 hearings on the Cash Collateral Motion [ECF No. 26] and the Bid Procedures Motion [ECF No. 150]." [Docket No. 216].

The Court conducted a hearing on the Motion to Quash on July 16, 2014 [Docket No. 218].  During the hearing, the Court indicated that it would not proceed on the motion until the directors were given an opportunity to retain individual counsel [Docket No. 241].  The Court continued the hearing to July 23, 2014 [Docket No. 218].  The hearing was subsequently continued without objection on several occasions to August 12, 2014 in order to provide the parties an opportunity to explore avenues for resolution.

During the hearing on August 12, 2014, the parties announced that a global settlement had been reached that would allow for the case to proceed forward on a consensual basis [Docket No. 307].  On August 15, 2014, the Committee, the Debtors, AIX Energy, LLC ("AIX"), Meridian Capital CIS Fund and Meridian Capital International Fund (collectively, "Meridian") filed their emergency motion to approve a global settlement (the "Compromise") [Docket No. 314].  As part of the Compromise, the parties agreed to a liquidating plan that would provide for the creation of a liquidating trust to be funded with a $10 million payment from Meridian as well as the transfer of all claims and causes of action held by the Debtors' estates [Docket No. 314].  The Motion to Quash and the deposition notices were withdrawn without prejudice [Docket No. 307].  The Court approved the Compromise by Order entered September 2, 2014 [Docket No. 346].

On August 28, 2014, the Committee issued a "Notice of Intent to Conduct 2004 Examination and Subpoena to Produce Documents" to each of the directors.  Each notice contained the following: "[t]he subject matter of the Bankruptcy Rule 2004 examination will cover all matters relating to Your involvement with the Debtors, as a member of the Board of Directors of Buccaneer Energy Limited or otherwise, as well as acts, conduct, property or to the liabilities and financial condition of the Debtors, or to matters which may affect the administration of the Debtors' estates, or to matters concerning any proposed chapter 11 plan and associated disclosure statement" [Docket Nos. 335, 336 and 337].  Numerous document requests accompanied the notice [Docket Nos. 335, 336 and 337].  The examinations were scheduled to take place in Houston, Texas on September 16, 17 and 18, 2014 [Docket Nos. 335, 336 and 337].  The notices contain no reference to the conference required by Bankruptcy Local Rule 2004-1(c).

The directors filed their Emergency Motion to Quash and for Protective Order and Motion for Rule 2004 Examination to be Taken by Remote Means on September 4, 2014 (the "Motion to Quash 2004 Exam" [Docket No. 350].  In the Motion to Quash 2004 Exam, the

directors asserted that because a global settlement had been reached, the Committee's request fell outside of the permissible scope of a Rule 2004 exam [Docket No. 350]. The directors also asserted that (i) the timing of the examinations was unreasonable in light of number of document requests made by the Committee; and (ii) conducting the examinations in Houston, Texas was overly burdensome [Docket No. 350]. The directors proposed to appear for their examination at a future date by video as a compromise [Docket No. 350].

The Committee filed its objection to the Motion to Quash 2004 Exam on September 8, 2014 [Docket No. 361]. In the objection, the Committee (i) again insisted that the directors travel to Houston; and (ii) tacitly acknowledged that the purpose of the examinations was to gather information for future litigation against the directors that would be prosecuted by the liquidating trust [Docket No. 361]. Despite having negotiated and supported a settlement that provided for a post-confirmation trust that would take ownership of these claims, the Committee alleged that "it is critical to the discharge of the Committee's duties that the 2004 Examinations of the Directors proceed before plan confirmation" [Docket No. 361].

The Court conducted a hearing on the Motion to Quash 2004 Exam on September 9, 2014. During the hearing, the Court repeatedly expressed reservations about the legitimacy of the Committee's request. Notwithstanding the foregoing concerns, the Court indicated that it was inclined to defer to the Committee's judgment and allow the examinations to proceed under certain conditions. After a recess, the parties announced a resolution that included the (i) production of non-privileged documents by the directors on a rolling basis; and (ii) examination of all three directors in London, England. The Court continued the hearing to allow the parties to prepare an agreed form of order.

The parties were unable to submit an agreed form of order. On September 17, 2014, the Court conducted a hearing to resolve the outstanding disputes on the proposed form of order. After hearing from the parties, the Court entered its "Order Regarding Emergency Motion to Quash and for Protective Order and Motion for Rule 2004 Examination to be Taken by Remote Means" (the "2004 Exam Order") on September 17, 2014 [Docket No. 376]. The 2004 Exam Order provides that the directors would appear in London, England for their examination [Docket No. 376]. The examinations were each limited to eight hours of testimony excluding objections, arguments and breaks [Docket No. 376]. The examinations were to commence on October 6, 2014 and conclude no later than October 10, 2014 [Docket No. 376]. The 2004 Exam Order also provided for the production of non-privileged documents that were responsive to the Committee's outstanding subpoenas on a rolling basis beginning immediately and concluding no later than October 3, 2014 along with a privilege log of withheld documents [Docket No. 376]. In accordance with the Court's prior statements regarding the allocation of the costs associated with the examinations, the 2004 Exam Order further provides as follows:

> ORDERED that any party requesting payment of fees, costs, and/or expenses in connection with the Examinations shall file an application with the Court and serve such request on the master service list within fourteen (14) days after the conclusion of the last examination. Any party objecting to such request shall have fourteen (14) days from the filing of such request to file an objection (notwithstanding Rules 2002 and 9006(f)) to such request, and serve such

> objection on the requesting party. Nothing herein shall limit or impede any party's right to object to any fee, cost or expense for which payment is requested under this paragraph. Any request under this paragraph shall be payable only pursuant to a final order of this Court; and it is further
>
> ORDERED that any amounts authorized under the preceding paragraph of this Order shall be payable by the proposed Creditors' Trust[1] on a first priority basis, from and after the effective date of a chapter 11 plan as contemplated pursuant to the conditional settlement approved by the Court at Docket No. 346. If a chapter 11 plan is not confirmed in accordance with the settlement approved by the Court at Docket No. 346, then the payment allowed under this paragraph shall have the priority provided by the Bankruptcy Code; and it is further
>
> ORDERED that the Bankruptcy Court shall retain jurisdiction and authority to interpret and enforce this order.

[Docket No. 376]. The Committee conducted the examinations in accordance with the 2004 Exam Order without major incident.

On October 22, 2014, the directors filed their application for reimbursement of fees and expenses incurred in connection with the 2004 Examinations (the "Application") [Docket No. 454]. In the Application, the directors requested reimbursement of $898,140 for attorney's fees and expenses related to the 2004 examinations and associated document production [Docket No. 454]. A Notice of Correction was filed on November 7, 2014 reducing the request to $883,132.52 [Docket No. 517], On June 4, 2015, the directors filed a supplement to the Application further reducing their request to $876,504.48 [Docket No. 655]. During the hearing, the directors further reduced the request to $868,504.48.

The Committee filed its objection to the Application on November 5, 2014 [Docket No. 509]. In its objection, the Committee asserted that the directors were not entitled to the reimbursement of any amounts based on the following:

1. Bankruptcy Rule 2004 only provides for reimbursement of reasonable and necessary travel expenses of an entity being examined, not payment of legal fees and other expenses.

2. Neither the Bankruptcy Rules nor Federal Rules of Civil Procedure provide for the payment of the legal fees and expenses of a party being examined. The Committee went on to list 20 facts it contends prove the Directors are "parties" to the bankruptcy case.

3. The Directors admitted they are concerned about future litigation against them therefore any fees and expenses incurred were for their benefit,

---

[1] The Creditors' Trust referred to by the Court is the Liquidating Trust under the confirmed Plan.

>  provided no benefit the Debtors, the Committee, or the bankruptcy estates, and are therefore not reimbursable.
>
> 4. The Directors lacked standing to assert claims against the Creditors' Trust because the trust had not yet been created at the time the Application was filed.
>
> 5. The request violates the Court's Settlement Order.

[Docket No. 509]. The Committee's objection was joined by AIMM Technologies, Inc. ("AIMM") and All American Oilfield Associates, LLC ("All American") [Docket No. 510].

By Order entered November 6, 2014, the Court conditionally approved the Debtors' disclosure statement and set a hearing for December 8, 2014 to consider final approval of the disclosure statement and confirmation of the Debtors' proposed plan [Docket No. 511]. On December 8, 2014, the parties appeared and made several announcements [Docket No. 560]. Based on these announcements, the Court continued the hearing to December 22, 2014 [Docket No. 560].

On December 22, 2014, the Debtors proceeded to offer evidence in support of final approval of the disclosure statement and confirmation of the proposed plan [Docket No. 576]. After completing the presentation, the Debtors requested without objection that the hearing be further continued to allow certain settlement negotiations to continue [Docket No. 576]. The Court granted the request and continued the hearing to January 5, 2015 [Docket No. 576]. On January 5, 2015, the Debtors appeared and requested a further continuance to allow settlement negotiations to continue [Docket No. 580]. The Court continued the hearing to January 13, 2015 [Docket No. 580].

On January 13, 2015, the Debtors appeared and announced that a comprehensive resolution had been reached [Docket No. 590]. After hearing from the parties, the Court gave final approval to the Disclosure Statement and confirmed the Debtors' Plan (the "Confirmation Order") [Docket No. 591]. The Plan provides, in relevant part, as follows:

> **14.2 Continuing Effectiveness of the Settlement Order and the Protective Order.** Nothing herein or in any Confirmation Order shall affect, alter or otherwise impair the Court's Order Approving Joint Emergency Motion to Compromise Controversy Under Rule 9019 of the Federal Rules of Bankruptcy Procedure [Dkt. No. 346], the Court's Order Regarding Emergency Motion to Quash and for Protective Order and Motion for Rule 2004 Examination to be Taken by Remote Means [Dkt. No. 376] (the "Protective Order"), or further proceedings consistent with the Protective Order.

[Docket No. 589]. Likewise, the Confirmation Order provides that:

> 68. Nothing in this Confirmation Order or the Plan will impair or diminish (i) that certain *Order Granting Debtors' Emergency Motion (1)*

> *Under 11 USC § 363(B) to Authorize the Debtors to Advance Defense Costs to Directors and (2) Under 11 U.S.C. § 362(D) for Relief From Stay to Allow Insurers to Advance Defense Costs to Directors* (Related Dkt. No. 377), signed on October 7, 2014, at Docket No. 423 and (ii) *Order Regarding Emergency Motion to Quash and for Protective Order and Motion for Rule 2004 Examination to be Taken by Remote Means* (Related Dkt. No. 350) signed on September 17, 2014, at Docket No. 376.

[Docket No. 591] (emphasis in original). The Confirmation Order further provides that:

> 50. The provisions of the Plan and this Order are binding on the Debtors, the Reorganized Debtors, the Liquidating Trustee and any Holder of a Claim or Interest, whether or not the Claim or Interest is Impaired under the Plan and whether or not the Holder of such Claim or Interest has accepted the Plan.

[Docket No. 591].

The Plan became effective on March 13, 2015 (the "Effective Date") [Docket No. 634]. On the Effective Date, (i) the Committee ceased to exist (¶7.8); (ii) the Liquidating Trust was created (¶7.3) (iii) the Liquidating Trustee was appointed (¶7.3); (iv) the $10 million settlement payment was delivered to the Liquidating Trustee on behalf of the Liquidating Trust (¶7.4.1.1); and (v) the Post-Confirmation Committee comprised of three former Committee members was formed [Docket No. 589].

The directors filed their reply to the objections filed by the Committee, AIMM and All American on June 12, 2015 [Docket No. 664].

After a series of unopposed continuances, the Court commenced a hearing on the Application on June 17, 2015 [Docket No. 674]. With the Liquidating Trust not having filed an objection, the Court had the following initial exchange with the Liquidating Trust's counsel:

**Court:**

[H]as Mr. Compton been able to review everything and take a position that's more refined than the objection that was originally filed by the committee? And let me give you, by way of example – are we still fighting the fight as to whether or not I meant what I said when I set the terms for the 2004 examination, or have we moved on and we're – we're now fighting about what's reasonable, what was necessary? Is Mr. Compton at the point where he can make that type of distinction for me?

**Counsel for the Liquidating Trust:**

We can make the distinction, your Honor.

(Transcript, Docket No. 676 at p. 10, ln. 20 – p. 11, ln. 5.

During opening argument, the Liquidating Trustee unveiled a two-pronged strategy. First, the Liquidating Trustee asserted that the Court did not have personal or subject matter jurisdiction to make the Liquidating Trust responsible for any amounts prior to its existence. Second, the Liquidating Trust asserted that all fees and costs related to the directors' privilege review could not be reasonable because upon the future effective date of the Plan, the Liquidating Trust would accede to the Debtors' privileges.

The directors proceeded to adduce testimony and offer documentary evidence in support of their application. At the conclusion of the day, the Court recessed and continued the hearing to June 29, 2015 [Docket No. 674]. On June 29, 2015, the Court continued with testimony from Jeffrey Compton, the Liquidating Trustee [Docket No. 681]. Despite having no experience in providing legal services and not even having read the transcripts of the 2004 examinations (Transcript, 7/20/2015, p. 97 ln. 17-18), Mr. Compton offered expert opinion testimony about the legitimacy of the fees and expenses incurred by the directors based on (i) a "benchmark" analysis[2]; and (ii) his belief that all parties should have known that the Liquidating Trust would ultimately succeed to the Debtor's privileges. The Court overruled the directors' challenge to Mr. Compton's competency to provide such opinions. Having now considered Mr. Compton's entire testimony and the lack of any substantive basis for the majority of his conclusions, the Court acknowledges that it erred in overruling this objection. Although the Court cannot now "un-ring the bell," the Court finds Mr. Compton's testimony wholly lacking in credibility[3] and has afforded little weight to Mr. Compton's testimony in rendering this decision.

After Mr. Compton completed his testimony, the Court continued the hearing to July 7, 2015 to allow the parties to prepare for closing arguments [Docket No. 681]. The Court also requested that the members of the Post-Confirmation Committee attend the continued hearing by telephone due to the Court's concern that the Liquidating Trust was being improperly managed.

On July 7, 2015, the Court reconvened the hearing [Docket No. 685]. After hearing from the Post-Confirmation Committee, the Court continued the hearing to July 27, 2015 to allow the parties to discuss possible alternatives for resolution [Docket No. 685]. With no progress having been made toward resolution, the parties proceeded with closing arguments on July 27, 2015. The Court took the matter under advisement.

---

[2] Mr. Compton's "benchmark" analysis is premised upon the notion that it costs approximately the same to review a document produced in discovery as it does to locate, review and produce that document in response to a discovery request. The Court gives no weight to this analysis as it lacks any substantive basis.

[3] At the conclusion of the hearing, the Court made a number of comments on the record regarding Mr. Compton's handling of the matter. As the oversight of the Liquidating Trustee was vested solely with the Post-Confirmation Committee under the confirmed Plan and counsel for the Post-Confirmation Committee previously advised the Court on July 7, 2015 that the committee was fulfilling its duties, the Court sees no reason to repeat those comments in this opinion.

## Analysis

The Court has jurisdiction over this contested matter pursuant to 11 U.S.C. § 1334. This contested matter is a core proceeding arising under title 11 pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O). The Court has constitutional authority to enter a final order in this matter under the Supreme Court's holding in *Stern v. Marshall*, 131 S.Ct. 2594 (2011). Further, the Court has the inherent authority to enforce its own orders. To the extent necessary, the parties have consented to the entry of a final judgment in this adversary proceeding by the Court. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015).

Bankruptcy Rule 2004 provides for the examination of persons and entities that have knowledge of the debtor's "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the estate . . . ." FED. R. BANKR. P. 2004(b). Though long recognized that the scope of a 2004 examination is broad, it is not limitless. *In re Eagle-Picher Indus., Inc.*, 169 B.R.130, 134 (Bankr. S.D. Ohio 1994); *In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987). The "examination should not be so broad as to be more disruptive and costly to the debtor [party being examined] than beneficial to the creditor [party requesting the examination]." *Texaco*, 79 B.R. at 553. If the cost and disruption to the person being examined outweigh the benefits to the examiner, the examination should be denied. *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998).

Rule 2004 further provides for the production of documents in accordance with Bankruptcy Rule 9016. FED. R. BANKR. P. 2004(c). Bankruptcy Rule 9016 makes Federal Rule of Civil Procedure 45 applicable to bankruptcy proceedings. FED. R. BANKR. P. 9016. Pursuant to Rule 45(d)(2)(b)(ii), the Court is required to protect persons who are not parties or officers of a party from incurring significant expense in connection with document production. FED. R. CIV. P. 45(d)(2)(b)(ii). Moreover, the Court is required to implement appropriate measures to avoid a party issuing a subpoena from imposing an undue burden or expense on a person subject to the subpoena. FED. R. CIV. P. 45(d)(1).

Bankruptcy Rule 9014 applies in contested matters and incorporates Bankruptcy Rule 7026. FED. R. BANKR. P. 9014(c). Bankruptcy Rule 7026 incorporates Federal Rule of Civil Procedure 26 into bankruptcy proceedings. FED. R. BANKR. P. 7026. Rule 26 provides that

> [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery . . . .

FED. R. CIV. P. 26(c)(1)(B); *see also In re Commercial Fin. Servs., Inc. et al.*, 247 B.R. 828 (Bankr. N.D. Okla. 2000) (holding that bankruptcy court has authority in Rule 2004 discovery to enter orders as justice requires to protect a person from undue burden or expense).

It remains unclear to the Court whether the Liquidating Trustee continues to challenge the Court's authority to enter the 2004 Exam Order. The Court has reviewed the 2004 Exam

Order as well as the predicates for its authority to enter such an order. The Court finds that the 2004 Exam Order (i) represents an appropriate balance of the competing interests; (ii) recognized the lack of a present need for the discovery at the time of entry; (iii) informed all parties of the consequences of proceeding forward with the examinations; (iv) is consistent with the above-cited applicable rules and notions of fairness; and (v) imposes the financial burden of the examinations on the entity for whom the discovery was ultimately undertaken. The Court further finds that it had the requisite authority to enter the 2004 Exam Order and that the allocation mechanism incorporated therein was fair and proper.

The Liquidating Trustee did challenge the Court's personal and subject matter jurisdiction over the Liquidating Trust at the time the 2004 Exam Order was entered. The Court finds this argument disingenuous. It was by this Court's orders that the Liquidating Trust was created and the $10 million settlement payment was made. Moreover, the very claims that the Committee sought to investigate by conducting the 2004 examinations were transferred to the Liquidating Trust by the Court's order confirming the Debtors' plan. The only argument posited by the Liquidating Trustee in support of his position is that the Trust didn't exist at the time the 2004 Exam Order was entered and it cannot therefore be bound. In the same breath, the Liquidating Trustee argues that the Liquidating Trust is the successor to the Debtors and enjoys the protections of the Plan. The Court also notes that the Liquidating Trust did not file its own objection but prosecuted the objection filed by the Committee to the directors' Application. The Liquidating Trust's objection that the Court lacked personal and subject matter jurisdiction to enter the 2004 Exam Order is overruled.

The Liquidating Trustee also challenges the fees and expenses incurred by the directors with respect to their privilege review. Mr. Compton testified that "it was foreseeable that the Liquidating Trust was going to succeed to those privileges. At the time, it was foreseeable the Liquidating Trust was going to pursue directors and officers, and the Liquidating Trust was never going to be, to my understanding, prevented from seeing any privileged documents of the Debtor." (Transcript, 7/20/2015, p. 10, ln. 9–15). As the Court understands this theory, Mr. Compton believes that it was unreasonable for the directors to conduct a privilege review despite not having a privilege waiver from the debtors and based on the anticipated future confirmation of a plan that would transfer the debtors' privileges to the Liquidating Trust as successor to the debtors. Such a position belies common sense. The discovery requests were propounded by the Committee—not the debtors or their successor. The trustee's position also assumes, with no legitimate basis, that the only privilege at issue was the debtors' attorney-client privilege. The directors and their counsel had no choice but to conduct a privilege review. To not have conducted such a review could have subjected the directors and their counsel to future liability depending on the outcome of future events, such as the potential conversion of the case to chapter 7, the confirmation of a different plan or otherwise, as a result of an improper waiver of the debtors' privileges. The Court finds this objection spurious. The Liquidating Trustee's wholesale objection to the fees and expenses attributable to the privilege review is overruled.

Unfortunately, the Court's analysis cannot end with the disposition of the Liquidating Trustee's questionable theories. The directors seek payment in excess of $850,000 from the Liquidating Trust. The ultimate allowance or disallowance of the request has a significant impact on the potential distribution to be received by the creditor beneficiaries of the Liquidating

Trust.  The beneficiaries deserve a meaningful review of the directors' request.  The Court would have expected the Liquidating Trustee to have retained the services of a skilled practitioner or other professional capable of rendering a qualified opinion on the fee request based on the professional's particular experience, skill and knowledge to assist the Court in its review.  While such an approach would not be cheap, the results of the Liquidating Trustee's self-touted bargain hunting approach of negotiating a flat fee of $22,500 with counsel to handle the entirety of the hearing of the directors' application are now evident. (Transcript, 7/20/2015, p. 14, ln. 10–19).

While at first blush the amount sought by the directors seems high, the Court will not engage in percentage-reduction justice.  The Court believes that justice is best served by allowing litigants their day in court with a decision rendered on the evidence adduced during that hearing.  The directors provided ample testimony in support of their request.  The directors offered the testimony of the supervising attorney handling the document review and production—an attorney specializing in electronic discovery with over 30 years of experience.  That testimony was buttressed by the testimony of two lawyers involved in the representation for whom the Court has great respect.  The testimony adduced by the directors was largely unchallenged except for limited objections to the hourly rates charged for contract attorneys conducting document review.

The Court has completed an in-depth, line-by-line review of the requested fees and expenses.  This review was conducted utilizing the Court's experience with fee requests that it reviews on a regular basis.  Carrying forward the eight categories identified by the directors, the Court finds that the following amounts were reasonable and necessary and should be allowed:

| Category | Amount Requested (Dkt 655) | Amount Allowed |
|---|---|---|
| Expenses related to 2004 Examinations in London | $37,913.40 | $6,729.21 |
| Expenses incurred in connection with preparation of the Examinations | $15,675.77 | $6,098.21 |
| Expenses in connection with document production | $36,494.11 | $36,494.11 |
| Attorney's Fees in preparing the Directors for the Examinations | $91,927.63 | $85,467.89 |
| Attorney's Fees in defending the Examinations | $34,425.00 | $34,425.00 |
| Attorney's Fees for collecting and reviewing documents | $590,302.08 | $525,984.53 |
| Attorney's Fees and Expenses related to Hearings in Connection with the Examinations | $47,250.33 | $43,225.33 |
| Attorneys' Fees incurred preparing the Application | $22,515.96 | $6,000.00 |
| **TOTAL** | **$876,504.28[4]** | **$744,424.28** |

---

[4] There is a $0.20 discrepancy between the "total" set forth in Docket No. 655 and the actual total of the individual categories set forth in Docket No. 655.

In reaching its decision, the Court has done its best to review each charge for which reimbursement is requested and make an independent decision on the particular charge. The process has been laborious and consumed countless hours. In the absence of any assistance from the Liquidating Trustee, however, the Court could not envision any other way that a fair decision could be achieved both for the directors and the beneficiaries of the Liquidating Trust. A separate order consistent with this opinion will issue. All relief not granted is denied.

**SIGNED: December 10, 2015.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**